WRIGHT WEEDON BOWIE *v.* STATE
OF MARYLAND

[No. 48, September Term, 1971.]

*Decided March 3, 1972.*

568

The cause was argued before THOMPSON, MOYLAN and GILBERT, JJ.

*Richard E. Zimmerman* for appellant.

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Robert S. Rothenhoefer, State's Attorney for Frederick County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The broad complaint of the appellant, Wright Weedon Bowie, is that he made a "deal" with the State and the State broke the bargain. The general cry of "Foul" takes on legal specificity in the parallel but distinct contentions 1) that an implicit grant of immunity foreclosed prosecution of the instant cases and 2) that his constitutional right to a speedy trial was infringed. Both claims were denied by Judge Samuel W. Barrick at a pretrial hearing in the Circuit Court for Frederick County, and both are here appealed. The denial of the latter is properly before us. The denial of the former was interlocutory in nature and is, therefore, prematurely challenged.

The calendar of surface events is simple. The actions beneath the surface are somewhat murkier. The appellant was charged by the Grand Jury for Frederick County for drug-related offenses under two separate indictments on May 21, 1969. That being the moment when he first became an "accused," all speedy trial calculations must be reckoned from that point. *United States v. Marion,* 30 L.Ed.2d 468; *State v. Hamilton,* 14 Md. App. 582. On November 17, 1969, six months later, the State's Attorney petitioned and the court ordered that the cases be transferred to the stet docket. On November 25, 1970, an additional twelve months later, the State's Attorney petitioned and the court ordered that the cases be removed from the stet docket. On January 7, 1971, an additional six weeks later, the appellant moved to have the indictments dismissed. Since we consider the speedy trial claim within the context of that motion, the running of the calendar will be frozen as of that date. The overall

period of time from indictments to motion is nineteen and one-half months.

At the pretrial hearing, both the appellant and the appellant's counsel testified. The State's Attorney did not. From its probing cross-examination of the appellant, however, the State's position was, in part at least, developed.

The evidence established that sometime in July, 1969, the appellant, on his own initiative, sought to make a "deal" for himself by offering information to the State in exchange for some form of leniency. The appellant, aided by counsel, prepared a three-page memorandum, promising various items of underworld intelligence, which the appellant was ostensibly willing to divulge. Appellant's counsel arranged for him to meet with the State's Attorney and several law enforcement officers. That meeting occurred on July 31, 1969. The testimony is utterly chaotic as to the nature of any agreement that may have come out of that meeting. It is clear, however, that the appellant sought the meeting. It is also apparent that the maximum consideration which the appellant was then seeking was a disposition of "probation without verdict" on the pending indictments. As a tactical judgment, he did not seek that disposition immediately but settled on a holding position "that his case be postponed for the time being." The three-page memorandum is not part of the record, but its concluding paragraph is:

> "I would feel it proper that his case be postponed for the time being. Although I have not made up my mind, I do not feel at the present time that I want to ask for its dismissal or a nolle pros, since I would be concerned about his security. I believe that I would ask of the State's Attorney consideration of a request on his part for 'probation without verdict'. My client at one time worked for the Government, and I want to keep his record in such condition that he might be able to obtain re-employment there should

he apply. At the same time, I am concerned at this time about a request for a nolle pros in view of the fact that it may endanger either his life or physical being.

> (s) Richard E. Zimmerman
> Attorney for Wright Weedon Bowie
> July 31, 1969

I have read the within papers, verified to the truth of the same and agreed to the undertaking suggested by my Attorney.

> (s) Wright W. Bowie"

The appellant acknowledged that he did learn subsequent to this July 31st meeting that the indictments against him would be placed upon the stet docket. In his testimony, he made the further claim that it was his expectation that this tentative termination of the charges would become absolute at some future time.

Upon our independent constitutional review, we find that the appellant, by his actions, waived his right to a speedy trial. We agree with the finding of Judge Barrick:

> "Here the cases were placed on the Stet Docket with the acknowledgment and apparent blessing of the defendant and his attorney. At no time has there been a request that the cases be brought to trial. According to the memorandum that Bowie's attorney prepared for his files after the conference on July 31, 1969, Bowie's attorney requested that these cases be 'postponed for the time being.' The memorandum goes on to indicate that he, Bowie's attorney, had not made up his mind as to the best way to dispose of these cases as far as Bowie was concerned and apparently was quite willing for them to go on the Stet Docket. Although there may have been an assumption that this action would finally dispose of them, and therefore both Bowie and his attorney may have been

> lulled into a false sense of security, this still amounts to a waiver of a speedy trial. It seems to the Court that one cannot acquiesce to all the procedural aspects concerning the trial of these cases and then plead that he was denied a speedy trial."

The waiver in this case was not by mere inaction, from which position of disadvantage the appellant might redeem himself by a showing of actual prejudice coupled with a showing of undue delaying tactics or bad faith by the State. *State v. Lawless*, 13 Md. App. 220, 227, n. 7; *Fabian v. State*, 3 Md. App. 270, 286. It consisted, rather, of affirmative action on his part which is absolutely foreclosing of the speedy trial claim. *State v. Lawless, supra*, 227-229, especially par. 5 of n. 8 and cases cited therein. The appellant did not simply acquiesce in delay but deliberately sought to avoid trial. Whatever arguable grievance he may have under some distinct theory of immunity granted and then abrogated, his election to pursue an alternative strategy to trial upon the merits is dispositive of the speedy trial issue.

It was at the second ground for his motion to dismiss the indictments that the appellant contended that the State had granted him complete immunity on the existing charges, however inartful its methods may have been in implementing that grant. He urges, therefore, that the State was foreclosed from resurrecting the indictments and his motion to dismiss was erroneously denied.

Even accepting his theory at face value for the moment, the reneging on a promise of immunity by the State would not, in any event, amount to a denial of an absolute constitutional right. Every wrong is not, *ipso facto*, unconstitutional. Whatever bargain a defendant may strike for himself in the prosecutorial marketplace, he possesses no *constitutional* right to have immunity conferred upon him. The denial of the motion, in this regard, was therefore, a *pro forma* order, interlocutory in nature, and any appeal therefrom may, under Mary-

land Rule 1035, be dismissed "as prematurely taken." *Raimondi v. State,* 8 Md. App. 468, 470-471, and cases cited thereat.

Although the prematurity of the appeal on this issue would ordinarily be dispositive of the point at this time, we note that the "immunity" issue was interlinked with the "speedy trial" issue as part of a single motion to dismiss the indictments. The evidentiary hearing elicited testimony on both points. The ruling of the trial court was on both points. Since the record has already been fully reviewed by us and since both points were briefed and argued upon this appeal, we deem it, in the exercise of our discretion and in the interests of judicial economy, not inappropriate to express our opinion on the issue at this time. See *Kardy v. Shook,* 237 Md. 524, 534-535.

We agree with the ruling of the trial court. Although the testimony at the hearing below permits of several factual interpretations, under none of the interpretations may the appellant prevail in law.

As the moving party, the appellant bore the burden of establishing a clear factual predicate for his theory of defense. Even leaving aside the question of whether the purported agreement was cognizable and enforceable at law, it was required of him to show 1) precisely what the agreement was, 2) his own performance in fulfillment of the agreed upon obligation and 3) an unjustified breaching of the agreement on the part of the State. The factual picture that unfolds here is, at best, impressionistic. Whatever agreement, if any, emerged from the proceedings of July 31 is, on the face of this record, as Winston Churchill once characterized the Soviet Union, "a riddle wrapped in a mystery inside an enigma." [1]

As to the consideration given by this appellant, it is not clear whether he was to furnish information, as of July 31, about past offenses or whether he was to cooperate with the State on a continuing basis by furnishing information as to such future violations of the crimi-

---

1. Radio broadcast over BBC on October 1, 1939.

nal law as would come within his ken. In the latter event, it is not clear how long the obligation would continue. It is not clear what the standard would be for measuring the appellant's performance. The petitions of the State to remove the indictments from the stet docket recited, in pertinent part:

"SECOND: That the reason given in support of the motion to STET was that the Defendant had offered to cooperate with the State, then and in the future, by supplying information pertaining to the violations of the Drug Laws in Frederick County.

THIRD: That not only has the Defendant failed to comply with his agreement, he now stands charged in No. 2671 Criminals in the Circuit Court for Frederick County, Maryland, for maintaining a common nuisance in violation of Section 286 (a) (5) of Article 27 of the Annotated Code of Maryland, amended, which said charge is a violation of the Uniform Controlled Dangerous Substances Act."

As to the consideration given to this appellant, it is not clear whether he received a purported immunity as to the indictments at bar or whether he received a purported immunity as to other crimes as to which he might incriminate himself in the course of furnishing information about them. It is not clear in either event whether he was offered "testimonial immunity" [2] or "transactional immunity." [3] If it were "testimonial immunity," appropriate redress would simply be the suppression of any incriminating statements at the time of the trial itself, not dismissal of charges. See *United States v. Blue,* 384 U. S. 251, 255.

Even if the law were as the appellant would have it be, he cannot be deemed to have established successfully at the pretrial hearing the existence of an agreement,

2. Sometimes referred to as "use immunity."
3. Sometimes referred to as "immunity from prosecution."

his own satisfactory performance pursuant to that agreement or the unjustified breach of that agreement on the part of the State. His plight on the state of the facts, however, is compounded by his plight on the state of the law. Even if the facts were as he would have them be, he cannot prevail in law.

Immunity, in the first place, could never be granted to the appellant by anyone in the circumstances of this case. There is no inherent, common law power in the State's Attorney or in the Grand Jury or in the judge or in anyone else to confer immunity from prosecution. Immunity is exclusively a creation of statute and can only exist where a statute has brought it into being. Maryland has no general immunity statute. There are limited statutory provisions providing for the granting of immunity for certain specific crimes. See, for example, Article 27, Section 23 (Bribery of Public Officials) ; Article 27, Section 24 (Bribery in Athletic Contests) ; Article 27, Section 39 (Conspiracy to Bribe) ; Article 27, Section 262 (Gambling) ; Article 27, Section 371 (Lottery) ; Article 27, Section 400 (Obtaining Liquor by Minors) ; Article 27, Section 540 (Sabotage) ; Article 33, Section 26-16 (c) (Fair Election Practices) ; and see *State v. Comes*, 237 Md. 271; *State v. Panagoulis*, 3 Md. App. 330. None of those apply to the case at bar. It is universally recognized that, absent a statutory grant of power, the prosecuting attorney is not entitled, solely by virtue of his office, to confer immunity upon a witness. 21 Am.Jur.2d, *Criminal Law*, § 150, "Who may grant immunity"; 8 Wigmore, *Evidence* (McNaughton Edition 1961), § 2281, "Expurgation of criminality: . . . Statutes granting amnesty, indemnity or immunity from prosecution for the offense: In general"; 1 *Wharton's Criminal Law and Procedure* (Anderson Edition), § 165, "Immunity from Prosecution"; 4 Jones, *Evidence*, § 862, "Immunity from Conviction—Promise of Prosecuting Attorney"; McCormick, *Evidence*, § 135, "Termination of Liability to Punishment: Immunity Statutes"; 22 C.J.S., *Criminal Law*, § 46 (2), "Constitutional and Statutory

Provisions for Immunity"; *United States v. Ford,* 99
U. S. 594. See also the thorough discussion in *Apodaca
v. Viramontes,* 53 N. M. 514, 212 P. 2d 425, 13 A.L.R.2d
1427, and the excellent annotation thereto, "Power of
prosecuting attorney to extend immunity from prosecu-
tion to witness claiming privilege against self-incrimina-
tion," 13 A.L.R.2d 1439.[4]

Even in the absence of a legally conferred immunity,
a witness may, under certain compelling circumstances,
avail himself of limited and alternative redress. The
compelling circumstances are such that the appellant
here would not qualify; the redress is such that the ap-
pellant here would not benefit. It is generally held that
where a prosecuting attorney purports to offer immunity,
even in the absence of lawful authority to do so; where
that action has the imprimatur of the trial court; and
where, as a result of that representation, a witness either
enters a plea of guilty to one charge in return for an
anticipated immunity on another or testifies against an
accomplice or co-defendant in what, absent immunity,
would be a self-incriminating fashion, he acquires at
least an equitable claim to immunity from prosecution.
The authorities are agreed, however, that such circum-
stances may not be pleaded in bar as a defense but sim-
ply give rise to an equitable right to a recommendation

---

4. And see *Pick v. State,* 143 Md. 192; *Gamble v. State,* 164 Md.
50.

In articulating very forcefully the universal proposition that
the power to grant immunity is not inherent in any officer, in any
branch of government, but can only be conferred by explicit pro-
vision of constitution or statute, then Chief Justice Cardozo, of the
New York Court of Appeals, said in *Doyle v. Hofstader,* 177 N. E.
489, 495:

> "The conclusion, we think, is inescapable that a power
> to suspend the criminal law by the tender of immunity
> is not an implied or inherent incident of a power to in-
> vestigate. It may be necessary for fruitful results in a
> particular instance, but it is not so generally indispensable
> as to attach itself automatically to the mere power to
> inquire. Whether the good to be attained by procuring
> the testimony of criminals is greater or less than the
> evil to be wrought by exempting them forever from pros-
> ecution for their crimes is a question of high policy as
> to which the law-making department of the government
> is entitled to be heard."

for executive clemency. *United States v. Ford, supra; Lowe v. State,* 111 Md. 1; *Wharton's Criminal Law and Procedure, loc. cit.* 22 C.J.S., *Criminal Law,* § 46 (1), "Furnishing State's Evidence," is representative of the uniform position of the authorities on this subject:

> "The fact that a participant or accomplice in the commission of a crime testifies or agrees to testify on behalf of the prosecution, fully and fairly disclosing the guilt of himself and his associates, with the understanding or promise, express or implied, that he will be granted a pardon or will not be prosecuted for his offense does not, in the absence of a statute so providing, as discussed infra § 46 (7), entitle him to a pardon or immunity as a matter of right; and such facts may not be pleaded in bar of a prosecution. . . .
>
> The established practice, in such cases, is not to prosecute the accomplice; if he has already been indicted the prosecuting attorney will usually enter a nolle prosequi to the indictment. If this is not done the accomplice's sole remedy is by application to the pardoning power; in accordance with established practice, the court usually will, in jurisdictions where a pardon before conviction is permissible, grant a continuance so that application for a pardon may be made, or, in jurisdictions where a pardon can be given only after conviction, grant a suspension of sentence until an application for executive clemency can be made."

See also 21 Am.Jur.2d, *Criminal Law,* § 147, "Right to immunity in absence of statutory authority":

> "Where the case is not within any statute, the general rule is that if an accomplice, when examined as a witness by the public prosecutor, discloses fully and fairly the guilt of himself

and his associates, he will not be prosecuted for the offense disclosed, but he cannot plead such fact in bar of any indictment against him or avail himself of it on his trial, since it is merely an equitable right to the mercy of the executive and can only come before the court by way of application to put off the trial in order to give the prisoner time to apply to the executive for that purpose."

In the case at bar, the purported conferring of immunity was not done in court with the approval of the court, nor did the appellant offer a guilty plea on certain charges or give testimony against an accomplice. Even if he did not suffer these disqualifications, the appellant would still be bereft of an absolute legal defense, which he here asserted on his motion to dismiss, and would be entitled at most to a suspension of sentence upon conviction in order that he might seek some sort of executive clemency. It is clear, however, that he is disqualified from even that limited redress.

The foregoing considerations would be enough, in and of themselves, to deny relief to this appellant even had the information which he divulged been self-incriminatory as to the charges at bar. That the information he ostensibly furnished related to other offenses, however, places him at yet a further disadvantage upon this issue. Neither the legal right to immunity, conferred by a prosecutor under an appropriate statutory authority, nor the equitable right to executive clemency, growing out of a prosecutor's *ultra vires* proffering of immunity, can ever attach to one crime because of even compelled testimony as to another crime.

The very notion of immunity is no more than a mirror image of the privilege against self-incrimination. State and national legislatures, in their wisdom, may from time to time determine that for certain purposes it is desirable to obtain testimony that would otherwise be unavailable because of a witness's privilege against self-

incrimination. Immunity is the legislatively-created device for obtaining such testimony. It negates the privilege against testifying by removing its predicate of possible incrimination. As such, the conferred immunity needs to be, in order to compel testimony, as broad as the privilege it displaces. Conversely, the immunity, as a mere negative aspect of the privilege, is no broader than the privilege it displaces. *Murphy v. Waterfront Commission of New York,* 378 U. S. 52; *Counselman v. Hitchcock,* 142 U. S. 547; *Brown v. State,* 233 Md. 288; *State v. Panagoulis, supra;* Wigmore, *loc. cit.;* McCormick, *loc. cit.;* Jones, *loc. cit.;* 2 Underhill, *Criminal Evidence* (5th Edition), § 361, "The privilege as it relates to immunity statutes"; 21 Am.Jur.2d, *Criminal Law,* § 148, "Constitutional and statutory provisions for immunity."

Neither does the evidence reveal nor does the appellant allege that he was asked for or that he furnished information bearing upon the instant charges. His privilege against self-incrimination as to these charges was, thus, in no way involved. There being no displacement of the privilege as to these cases, there could be no immunity following in its attendant wake.

In *Allers v. State,* 144 Md. 75, the defendant was convicted for burglary in Baltimore County. His claim, on appeal, was that he had been granted immunity by the State's Attorney for Baltimore City as an inducement for him to testify as a State's witness in the notorious Norris murder case. The narrow holding of the Court of Appeals was that the State's Attorney for Baltimore City had no authority to promise immunity for crimes committed beyond the jurisdiction of Baltimore City, thereby binding the hands of his brother prosecutors in other jurisdictions. In strong *dicta,* however, the Court intimated that compelled or induced testimony as to one crime can never serve to confer immunity as to other and unrelated crimes. The Court said, at 79:

"Appellant was being tried for an offense which was in no way connected with the crimi-

nal case in which he became a witness on the promise of immunity. There is high authority for the proposition that, even if the present case had arisen, and the indictment been found, in Baltimore City, within the jurisdiction of the state's attorney who is alleged to have promised immunity as to all crimes which defendant had then committed as an inducement to him to testify in a particular case about to be tried in Baltimore City, such promise would have been without authority or effect so far as it was intended to protect the defendant from prosecution in the present case. See 24 *L. R. A.* (N. S.) p. 441, note."

*A fortiori*, the mere furnishing of information, something less than giving testimony, about unrelated crimes can never serve to confer immunity as to a pending charge. Pertinent here is 22 C.J.S., *Criminal Law,* § 46 (7), "Testimony under Agreement," p. 179:

"An agreement which looks merely to co-operation of accused with state officers in the detection of crime generally cannot afford immunity; nor can an agreement to dismiss a prosecution in consideration of information as to other offenses be enforced."

See also *Application of Parham,* 6 Ariz. App. 191, 431 P. 2d 86.

It may be, as the appellant asserts, that he furnished to law enforcement officials information about other crimes and other criminals. If this be so and that information in no way incriminated this appellant, he would be bereft of even an arguable claim of immunity. If the information furnished was not incriminating as to him, he could claim no privilege against self-incrimination. If there was no privilege to be displaced, there could be no immunity as the displacing agent. Upon a proper summons, he could be required to furnish such information

before a Grand Jury or before a trial court, and he would not be privileged to withhold it. As Professor Mc-Cormick points out, in *Evidence* at p. 286, "Immunity statutes have as their purpose not a gift of amnesty but the securing of testimony which because of privilege could not otherwise be procured." The point is well articulated in 21 Am.Jur.2d, *Criminal Law,* § 148, at p. 218:

> "To be entitled to immunity from prosecution under a constitutional or statutory provision granting immunity, the witness must have given testimony or produced evidence to which the privilege against self-incrimination applies. In other words, the witness becomes immune only if he could have properly refused to testify because his answers would tend to incriminate him or his testimony was of a character he was privileged to withhold."

See also *Henderson v. State,* 281 S. W. 557 (Texas).

If, on the other hand, the appellant did furnish information to law enforcement officials about other crimes and other criminals and if such information did incriminate him, even then his arguable claim of immunity (assuming a compulsion, assuming a statutory authority for the prosecutor to confer immunity and assuming an actual grant to him of such immunity) would go only to such other crimes and not to the ones at bar. The appellant is not immune, and his prosecution may proceed.

*Order of the trial court denying the motion to dismiss affirmed and cases remanded for further proceedings; costs to be paid by appellant.*