## GARY LEWIS MONTGOMERY *v.* STATE OF MARYLAND

[No. 168, September Term, 1972.]

*Decided February 21, 1973.*

120

The cause was argued before POWERS, CARTER and SCANLAN, JJ.

*Michael E. Kaminkow* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Carroll Keith Meiser, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

The appellant, Gary Lewis Montgomery, was convicted by a jury in the Criminal Court of Baltimore under an indictment (2942), charging him with robbery with a deadly weapon of Joseph Crawford, and under a second indictment (2943), charging him with robbery with a deadly weapon of Bernard Dembeck, President of the Weekly Savings and Loan Association, Baltimore. Judge Liss, who presided at the trial, sentenced the appellant to ten years on his conviction under the first indictment, and to an additional, consecutive sentence of fifteen years on his conviction under the second indictment. Montgomery has appealed from the convictions and judgments.

## QUESTIONS PRESENTED

Appellant's primary attack on the judgments below is his claim that the evidence to sustain the verdict was legally insufficient, in that testimony of an admitted accomplice was not corroborated by other evidence. Additionally, he argues in this Court that:

(1) The trial court erred in allowing the jury to consider the testimony of Crawford, a witness for the State, whose testimony the appellant contends was so contradictory as to lack probative value.

(2) The trial court denied appellant effective representation by counsel.

(3) The trial court was prejudiced against the appellant to the extent of denying him a fair and impartial trial.

For reasons which appear below, we conclude that the trial judge did not err in his rulings or act arbitrarily in his conduct of the trial, except that appellant's motion for a judgment of acquittal under the second count should have been granted since the testimony of the admitted accomplice was not sufficiently corroborated by other evidence.

## THE ACCOMPLICE'S TESTIMONY CONCERNING THE ROBBERY OF THE SAVINGS AND LOAN ASSOCIATION WAS NOT SUFFICIENTLY CORROBORATED

James F. Mills, conceded by the State to have been an accomplice of the appellant, testified for the prosecution. Mills was given "immunity" both before the grand jury and in connection with his testimony at Montgomery's trial.[1]

Mills testified that the appellant and James Rose came to his house on the late evening hours of July 8, 1971, to ask him if he wanted to go to Virginia to take part in the burglary of a drug store. Mills agreed and the three of them started out to Virginia in an automobile owned by a girl friend of Rose. However, the planned Virginia criminal enterprise was abandoned when the headlights of the car went out.

The three then decided to get some wine and ride around. At the intersection of Milton Avenue and Fayette Street, in Baltimore, Joseph Crawford pulled up behind them in a 1966 Pontiac car and offered to engage their automobile in a race. They rejected Crawford's invitation, but invited him to have a drink of wine which he accepted. The four men then went to the house of Mills' sister where they continued to drink and began to play cards. At this time, Rose, Mills and Montgomery, according to Mills, agreed on a plan to "take" Crawford's car from him. Rose suggested that all of them ride in Crawford's car to get some more wine. While enroute to replenish the wine supply, Mills, in furtherance of the plan to steal the car, reached over and turned off the ignition. Crawford, who was driving, jumped at Mills, but at that point the appellant, who was sitting directly behind Crawford, reached over from the back seat and struck him with a blackjack.

---

1. The "immunity" conferred, of course, was no more than a prosecutor's promise not to prosecute. *Bowie v. State*, 14 Md. App. 567, 575-78, 287 A. 2d 782 (1972).

Mills testified that Rose then pulled Crawford out of the car. The victim immediately jumped up and ran away. The three drove Crawford's Pontiac to a location where Rose had parked his own car. Mills then drove Rose's car, joining Montgomery and Rose at the latter's apartment. There, Mills testified, Rose removed spare tires, a tool chest, and other items from the trunk of Crawford's car and took them into his apartment.

The three men stayed at Rose's apartment for about a half an hour and **then** went to Montgomery's house where they stayed until about 6:00 o'clock in the morning. They then procured nylon stockings from Rose's girl friend, intending to use them as face masks in a robbery, according to Mills. At this point in time (6:00 a.m., July 9, 1971), the trio had not made up their minds where or what the robbery was to be. Rose first suggested a bank on O'Donnell Street to which the trio went about 8:00 o'clock in the morning. They rode in Crawford's car to this first bank, but soon abandoned the attempt to rob it. Mills testified that he wanted to go home at this point, but that Rose convinced him that he should join the other two in robbing the Weekly Savings and Loan Association on Glover and Fait Avenue. Mills then described how all three entered the savings and loan association and robbed it at about 9:30 a.m. During the holdup, both appellant and Rose had .22 caliber pistols, but the appellant kept his in his pocket while Rose used his gun as a threat against three people who were in the bank.

After completing the holdup, Mills testified, the three jumped into Crawford's Pontiac and drove to Pratt and Castle Streets where they parked the vehicle. From there, they walked to Rose's mother's house where they divided the money. Mills recalls that his "share of the money was approximately one thousand dollars."

Joseph Crawford was called as a witness. He identified the appellant as one of the three men with whom he had been drinking on the late evening of July 8, 1971 and the

early morning of July 9, 1971. He did not identify the other two, including Mills. His testimony as to how the car was taken from him was generally similar to Mills' testimony concerning the manner in which the three had stolen the Pontiac.

Bernard Dembeck, President of the Weekly Savings and Loan Association, was called to the stand to describe the holdup which occurred on the morning of July 9, 1971. Because the three participants had worn masks made of nylon stockings, Dembeck was unable to identify any of them.

The defense then called three alibi witnesses, whose testimony basically was that appellant was baby sitting for his sister at the time of the bank robbery and that they did not see Mills come to Montgomery's house at any time on July 8, 1971.

Despite its rejection in some jurisdictions,[2] Maryland has long adhered to the rule that an accomplice's testimony must be corroborated by other evidence, if such testimony is to serve as a basis of a conviction. *Luery v. State,* 116 Md. 284, 81 A. 681 (1911) ; *Wright v. State,* 219 Md. 643, 647, 150 A. 2d 733 (1959), *cert. denied,* 361 U. S. 851 (1959) ; *Boone v. State,* 3 Md. App. 11, 16, 237 A. 2d 787 (1968), *cert. denied,* 393 U. S. 872 (1968).

In *Luery,* where the Court of Appeals first enunciated the rule for application in Maryland, the Court stated:

> "Hence it would seem to be safer to require some corroboration * * *. As the reason for the rule, as adopted by most Courts, is that the testimony of an accomplice alone and unsupported is regarded as too doubtful to be safe, the important matter is to have him supported in at least some of the material points involved, tending to show the guilt of the accused." *Id.* at 293-4.

2. See *e.g., State v. Carey,* 76 Conn. 342, 56 A. 632 (1904); Wharton, *Criminal Evidence,* § 447 (12th ed.) (1956).

In *Wright v. State, supra,* the Court of Appeals redefined the rule to require that "the corroborative evidence must support the testimony of the accomplice as to some of the material facts tending to show that the accused was either identified with the perpetrators of the crime, or had participated in the commission of the crime itself." *Id.* at 650.

In *Early v. State,* 13 Md. App. 182, 282 A. 2d 154 (1971), this Court reviewed and applied the general rules respecting the sufficiency of evidence to corroborate an accomplice's testimony. There, we said:

> " 'Corroborate' means to strengthen, not necessarily the proof of any particular fact to which an accomplice has testified, but the probative, criminating force of his testimony.' *Wright v. State,* 219 Md. 643, 649, quoting with approval 1 Underhill *Criminal Evidence* (5th ed. 1956) § 185. It is settled that the corroborative evidence must tend either: (1) to identify the defendant with the perpetrators of the crime, or (2) to show the defendant's participation in the crime itself. *Foxwell v. State, supra; Spies v. State,* 8 Md. App. 160. If with some degree of cogency it tends to establish either of these matters it would be sufficient, authorizing the trier of fact to credit the accomplice's testimony even with respect to matters as to which there had been no corroboration. *McDowell v. State, supra,* at 213. Corroboration need not extend to every detail. *Brown v. State,* 210 Md. 301, 305 and cases there cited. So it is not necessary that in and of itself the corroborating evidence be sufficient to convict, and not much in the way of corroboration is required; only slight corroboration is necessary. The corroborating evidence may be circumstantial. *Nolan v. State,* 213 Md. 298, 309. 'Whether the testimony of an accomplice has in fact been sufficiently corroborated must, of

course, depend upon the facts and circumstances, and the inferences deducible therefrom, in each case.' " *Wright v. State, supra,* at 650. 13 Md. App. 191-2.

Application of the controlling principles to this case requires the conclusion that the testimony which the accomplice gave concerning the blackjacking of Crawford and the robbery of his automobile was sufficiently corroborated by the testimony of the victim who identified the appellant as one of three men who beat and robbed him.

With respect to the bank robbery committed the next day, however, a different result is dictated. First, there was no corroborative evidence tending "to show the defendant's participation" in that particular crime. Second, there was no corroborating testimony offered which identified the appellant "with the perpetrators of . . . [that] crime." 13 Md. App. at 191. It was the theory of the trial court that the testimony of Crawford which identified appellant as one of a trio who robbed him of his automobile also served to identify him with the perpetrators of the subsequent robbery of the Weekly Savings and Loan Association. In this, the lower court was mistaken. Crawford, the automobile robbery victim, did not identify either the accomplice or the third person as persons who were present, along with the appellant, when his car was stolen some eight or nine hours before the bank robbery. While he identified the appellant he did not identify either of his two companions. The appellant's association with the alleged perpetrators of the second robbery was not shown by any non-accomplice testimony. *Id.* at 192.

While only slight corroboration of an accomplice's testimony is necessary, still there must be some, unless the requirement itself, in effect, is to be jettisoned. We hold that the testimony of the accomplice with respect to appellant's alleged participation in the bank robbery was not corroborated by evidence either (a) identifying him

with the perpetrators of that robbery, or (b) showing that he participated in it. The evidence, therefore, is insufficient to support the appellant's conviction under the second indictment (2943). The case will be remanded for a new trial on that indictment.

## APPELLANT'S REMAINING CONTENTIONS ARE MERITLESS

The appellant's claim that the trial court erred in not excluding Crawford's testimony because of its allegedly "vague and contradictory" nature cannot stand up. While Crawford may have originally told a story to the police concerning how his car was stolen which was different than the one he gave on the stand, he definitely identified the appellant as one of the three men who took his car. Appellant's reliance on *Kucharczyk v. State,* 235 Md. 334, 201 A. 2d 683 (1964), is thus misplaced. In *Kucharczyk,* the prosecuting witness made contradictory statements on the stand which were never explained, including unqualified statements "that the crime for which the appellant was convicted never, in fact, occurred." *Bailey v. State,* 16 Md. App. 83, 94, 294 A. 2d 123 (1972). In *Bailey,* we attempted to make clear the limited applicability of the *Kucharczyk* decision. Whatever its restricted reach, however, *Kucharczyk* is clearly distinguishable from this case, where the State's witness told but one consistent story at the trial.

The appellant also complains that he was not afforded effective representation by counsel. Prior to the trial, he advised the trial court that he was dissatisfied with his attorney. Before the trial began, Judge Liss, solicitous in his protection of the appellant's rights, appointed Mr. Angeletti, an experienced trial attorney, to serve as co-counsel with Mr. Douglass, appellant's first attorney. At the conclusion of the trial, the appellant told the court that he was satisfied with the way his counsel had conducted his defense.

Our own review of the record convinces us that the appellant was afforded effective representation by his two assigned attorneys. Mr. Angeletti and Mr. Douglass mounted a vigorous defense. They carefully cross-examined the prosecuting witnesses, including Mills, the accomplice. They called several alibi witnesses. Finally, on three separate occasions, by appropriate motions, they pressed on the trial court the very issue upon which we have reversed the trial judge on this appeal, *i.e.,* that Mills' testimony was not sufficiently corroborated.

In *State v. Merchant,* 10 Md. App. 545, 550-1, 271 A. 2d 752 (1970), we stated that the test to determine whether a defendant has been afforded effective representation by counsel is "whether, under all the circumstances of the particular case, the petitioner was afforded genuine and effective representation." That test was more than met by the tenacious defense which Mr. Angeletti and Mr. Douglass conducted at the trial.

Application of the test stated in *State v. Merchant, supra,* also disposes of any lingering complaints which the appellant may still harbor concerning the representation by counsel afforded him in the pretrial stage of the litigation. Before trial, appellant advised the trial judge that he was dissatisfied with his first attorney because the latter had failed to supply him with copies of legal papers, had failed to carry out his request that he be placed in a lineup, had not requested the depositions of State witnesses, and had not taken the names of appellant's witnesses. The trial court then advised the appellant: that he was not personally entitled to legal papers already given to his lawyer; that the State was not required to place him in a lineup; and that in Maryland no provision is made for the taking of depositions of State witnesses. The trial judge also made a finding that the appellant gave his attorney the names of persons he wished to call as witnesses for the first time on the day of trial. Judge Liss directed the sheriff immediately to issue summonses to the three witnesses named by the

appellant for their appearance on the next day. At the conclusion of the trial, the appellant agreed that his co-counsel had called all the witnesses whom he desired to have testify in his behalf.

Appellant's contention that he was not afforded effective representation by counsel in this case approaches the frivolous. His defense was conducted not by one, but by two competent attorneys. As already stated, his co-counsel put together a strong defense and protected the appellant's rights throughout the trial. On this appeal, the basic theory of the defense has been vindicated as to the second count. There is absolutely no merit in his claim that the trial court denied him "his constitutional right to the effective assistance of counsel," either in the pretrial stage or at trial.

This leaves for disposition appellant's final complaint that the trial court was prejudiced against him to the point of denying him a fair and impartial trial. Again, there is no substance to the allegation. A careful review of the record convinces us that, except for his failure to grant the motion for a judgment of acquittal under the second indictment, all of Judge Liss's rulings on the law and on the introduction and exclusion of evidence were well within the bounds of his judicial discretion. Neither singly or collectively, do such rulings of the trial judge imply even the slightest suggestion of a prejudice or predisposition on his part to deny the appellant a fair and impartial trial. Nor is that conclusion impaired by a comment which the trial court made in connection with a ruling sustaining the appellant's objection to a question propounded by the prosecution to a State witness. Said the court: "I don't know why the first question was necessary, Mr. Meiser. I would assume its the truth. He swore to tell the truth." The comment was clearly a rebuke to the prosecution and not prejudicial to the defense. In any event, there was no objection to the comment and no request was made for an instruction that the jury disregard it. *Daniels v. State*, 213 Md. 90, 105,

131 A. 2d 267 (1957). The question, therefore, is not before us. Rule 1085.

*As to indictment 2942, judgment affirmed; as to indictment 2943, judgment reversed and remanded for a new trial.*