## WILLIAM BOBBY FOWLER, JR. *v.* STATE OF MARYLAND

[No. 492, September Term, 1972.]

*Decided June 1, 1973.*

38

The cause was argued before MORTON, THOMPSON and POWERS, JJ.

*Henry L. Belsky* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Leslie Gladstone, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

In this appeal from his conviction in the Criminal Court of Baltimore of receiving stolen goods for which he received a two year sentence, appellant raises two issues — denial of his motion to dismiss the indictment and error in the court's instructions to the jury.

It appears that appellant was indicted for this crime on April 7, 1967. The indictment was placed on the stet docket by the State, with the appellant's consent, on November 9, 1967. Some four years later, June 15, 1971, the State filed a motion to strike out the stet. The appellant then filed a motion to dismiss the indictment and later a motion for a speedy trial. On April 28, 1972, the stet was stricken by Judge Solomon Liss and the case proceeded to trial before a jury which returned the verdict resulting in the judgment of guilt which is the subject of this appeal.

In opposing the motion to remove the case from the stet docket and in arguing his motion for dismissal of the indictment, appellant accuses "the State of reopening the

case only after a previous murder-rape case was reversed" by this Court, (see *Fowler v. State*, 6 Md. App. 651, affirmed in *State v. Fowler*, 259 Md. 95) "so as merely to impose additional punishment on the appellant because of his success at the appellate level." He states that he was told "that in spite of the fact that the State had the power to strike out the stets, that as a practical matter they would never be reopened that he had nothing to worry about insofar as going to trial on these cases."

Additionally, he contends that he was prejudiced by the delay in that "people's memories are not going to be what they were four years ago" and "many notes and many bits of evidence that may have been available to him undoubtedly will not be available to him now."

Finally, he says: "The question presented at this time is not whether or not the Appellant failed to take the appropriate procedural steps to protect his right to a speedy trial, but whether or not a trial of a case which was once placed on the stet docket and reopened four years later was violative of the Defendant's constitutional rights under the due process laws of the Federal Constitution."

Although the origin of the stet procedure is shrouded in history, in modern times the entry of a stet in a criminal case, as Judge Gilbert pointed out in *Smith v. State*, 16 Md. App. 317, 323, "simply means that the State will not proceed against an accused *on that indictment at that time.* It is not ordinarily a final determination of the charges against the accused, so that the State may, at a later point in time, proceed under the same indictment. See *State v. Morgan*, 33 Md. 44 (1870); *Regle v. State*, 9 Md. App. 346, 353 n. 1; 264 A. 2d 119 (1970)."

At the time the stet in this case was entered, there were eighteen separate indictments pending against the appellant and all were placed on the stet docket at the same time. The prosecuting attorney explained to the court:

> "MR. CARDIN: In these indictments, the State would, at this time, offer stets to each and every indictment for the reason Mr. Fowler has been

convicted in companion cases and is presently serving a term of life plus forty years, and the State feels at this time the stets would be proper.

MR. MAXWELL: If the Court please, I have explained to Mr. Fowler the nature of a stet and the legal implications of what a stet means. I have also explained to Mr. Fowler he does not have to accept stets as such. Mr. Fowler informs me he will in fact accept the stets. Is that correct?

MR. FOWLER: Yes.

MR. MAXWELL: Understand exactly what a stet is?

MR. FOWLER: Yes.

MR. MAXWELL: Explained to you in the future the State could bring these cases to trial if they so wish, correct?

MR. FOWLER: Yes.

MR. MAXWELL: But you do wish to accept stets in this matter?

MR. FOWLER: Yes.

MR. MAXWELL: Anything else you wish to tell the Court on the matter of why we are here today, the stets?

MR. FOWLER: No sir."

It is perfectly clear, therefore, that appellant consented to the entry of the stets and was made fully aware of the State's right to petition the court in the future to remove the cases from the stet docket and bring the appellant to trial on any or all of the stetted indictments.

Moreover, it is equally clear that under Maryland Rule 709 appellant had the right at any time to file a motion for a speedy trial on any or all of the stetted indictments. In *Brown v. State*, 2 Md. App. 388, 398, Chief Judge Orth (then Associate Judge) explicated the scope of the Rule: "We are

also aware that in Maryland there is a means by which an accused can obtain a dismissal of a stetted case or have it restored to the calendar for trial. The provisions of Md. Rules, 708-710 and 714 are similar to those of a former statute, Md. Code (1957), Art. 27, § 592, repealed by the Acts of 1963. Rule 709 provides that an accused, on petition seeking an immediate trial '* * * shall be tried, without regard to term of court, within such reasonable time as may accord him a speedy trial.' In *Martel v. State*, 221 Md. 294, at page 301, the Court said: 'Although the statute, Code (1957), Art. 27, § 592, contemplates as a customary procedure the use of the information before indictment, an accused may avail himself of its remedial procedures after the indictment has been returned and subsequently stetted.'"

By his acquiescence in the entry of the indictments on the stet docket and by his failure thereafter to petition for their removal for the purpose of trial thereon, the appellant clearly and convincingly waived his right to a speedy trial or trials within the concept of his Sixth Amendment right under the federal constitution and his right under Article 21 of the Maryland Declaration of Rights.

In concluding that the appellant has, under these circumstances, voluntarily waived his constitutional right to a speedy trial, we are not unmindful of the Supreme Court's decision in *Barker v. Wingo*, 407 U. S. 514, 528, in which the absolutism of the "demand-waiver doctrine" was rejected. Under that doctrine "a defendant waives any consideration of his right to speedy trial for any period prior to which he has not demanded a trial." *Id.* at 525. In rejecting that doctrine, however, it is clear that the Supreme Court did not intend to eliminate all vestiges of the demand-waiver principle for it made the specific admonition: "We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside." *Id.* at 529.

And, of course, that is the situation here for the appellant, represented by able counsel, affirmatively and readily acquiesced in the stet procedure, which procedure was explained to him in comprehensive terms. Moreover, he held

the key to obtaining a speedy trial through the exercise of the rights accorded him by Maryland Rule 709. It is perfectly evident that appellant did not really want a speedy trial; in fact, he wanted no trial at all. The delay was primarily attributable to his conduct and constituted a demonstrable waiver of his right to a speedy trial; as such, it must "be given effect under standard waiver doctrine, the demand rule aside." Otherwise stated, having by his own course of action waived his right to a speedy trial, he cannot now be heard to complain that there was a denial of that right. See *Bowie v. State*, 14 Md. App. 567.

Nor do we find, as appellant contends, that the trial of this case some four years after being placed on the stet docket would be "violative of the Defendant's constitutional rights under the due process laws [sic] of the Federal Constitution." It is at once apparent that appellant's claim of prejudice is completely speculative and insubstantial.

There has been no evidence of actual prejudice to the person of the appellant for he was incarcerated under convictions for other crimes during most, if not all, of the period; and there has been no showing of prejudice to the defense of the appellant. See *State v. Lawless*, 13 Md. App. 220, 241. There is no proof or even an allegation that specific evidence has actually disappeared or been lost or that alibi or other defense witnesses have died or are otherwise not available because of the delay. *United States v. Ewell*, 383 U. S. 116, 122 (1966). The only assertion of prejudice here is the generalized allegation of appellant's counsel that "people's memories are not going to be what they were four years ago" and the suggestion that "many notes and many bits of evidence that may have been available to him undoubtedly will not be available to him now." Such a situation, if true, could work equally to the advantage of the appellant and to the disadvantage of the State. We do not think this imprecise allegation is sufficiently compelling to warrant dismissal of the indictment for lack of due process.

Nor do we find anything in *Klopfer v. North Carolina*, 386 U. S. 213, which would compel a finding that the stet procedure followed here denied the appellant that

fundamental fairness assured by the Fourteenth Amendment Due Process Clause. See *Smith v. State, supra.*

With respect to his second contention, appellant complains of the following instruction to the jury:

> "The State is relying on what is the law in this State as well as in the rest of the country and that is that an inference of guilt arises from the possession of recently stolen property. Upon proof of the commission of the crime the inference is strong enough to establish the criminal agency of the possessor of such goods and to sustain a conviction. Once the inference arises the burden is upon the possessor of such goods to give a reasonable explanation of how it came into his possession. Now again here too you have a very unusual [set of] circumstances in that the defendant elected not to testify, which he had a perfect right to do and you may not infer guilt from the fact that he did not take the stand. In other words merely because he refused to testify or elected not to testify, whichever the case may be, that does not in itself give you the right to presume that he's guilty because he did not testify, because that is an absolute right which he has. On the other hand, the exercise of that right does not excuse him from going forward with the burden is cast upon him to give a reasonable explanation of how he came into possession of the stolen goods if you find that he was in fact in possession of these stolen goods."

It is contended that this instruction raises "a permissible inference to the level of an absolute inference", pointing out that in *Mills v. State,* 3 Md. App. 693, 698, this Court said: "If, therefore, the conviction is to be sustained, the facts must be such as to bring the case within the well established rule that when an accused is found in unexplained * * * possession of recently stolen goods, an inference of fact may be drawn which, if the circumstances revealed by the

testimony so indicate, will support a conviction of receiving stolen goods."

Appellant argues that in *Mills* we pointed out that "an inference of fact may be drawn", whereas under Judge Liss's instructions, the jury is compelled to draw an inference of guilt. While it is apparent that the challenged instructions could have been articulated with more clarity and precision, we think the instruction, in substance, simply says that the unexplained possession of recently stolen goods gives rise to an inference of fact which will support a finding of guilt and the appellant here had the burden of producing some explanation of his possession which would serve to overcome the inference the jury was entitled to draw in the absence of an acceptable explanation. See *Shotkosky v. State*, 8 Md. App. 492.

*Judgment affirmed.*