IN RE: SPECIAL INVESTIGATION NO. 231

[No. 91, September Term, 1982.]

*Decided February 8, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Stefan D. Cassella, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Alan J. Goldstein,* with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* and *Joshua R. Treem* and *Schulman & Treem* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here turn back an attempt by the Attorney General of Maryland to use the Code of Professional Responsibility to prevent individuals from being represented by counsel of their choice. Hence, we shall affirm the order of Judge Milton B. Allen in the Criminal Court of Baltimore, now the Circuit Court for Baltimore City.

I

Pursuant to a directive from the Governor of Maryland issued under Maryland Constitution Art. V, § 3 (a) (2), the Attorney General for some extended period of time has been engaged in investigations pertaining to certain health care providers. He has set up what is known as the Medicaid Fraud Control Unit in his office. His investigation has reached to sister entities in one of the counties of Maryland. In connection with that investigation the Attorney General filed a motion in the Criminal Court of Baltimore, in connection with subpoenas issued by the Grand Jury of Baltimore City, seeking to prevent joint representation of four individuals by the attorney who has heretofore represented them. Subpoenas previously issued to them had already been quashed by action of the Criminal Court of Baltimore. Since that action was on appeal, the granting of

the State's motion would have affected representation of those four individuals in the appellate process. We emphasize that no criminal proceeding was pending before the court. This motion stood by itself as a separate action.

The State alleges that were the attorney to represent all four of the individuals in question he would be representing conflicting interests. The State contends that there are two actual conflicts, (1) that where an attorney represents both target and non-target defendants in the same grand jury investigation there is a direct conflict, and (2) there is an inherent conflict when one of the four individuals has been offered immunity. The offer of immunity was not made under any Maryland statute providing for immunity but under the Attorney General's theory of contractual immunity.

There was an evidentiary hearing in this case in which the State was afforded a full opportunity to develop a factual basis for its contentions. Unfortunately for it, however, objections were sustained on two grounds to virtually every question asked of the only witness it called to the stand. The objections were based upon the ground that the State cannot compel an individual to testify against himself and on the ground that the questions themselves violated the attorney-client privilege. Although the State excepted to the court's rulings it has raised no issue relative to those rulings on appeal. Such facts as were before the court were gleaned from affidavits submitted by the Attorney General.

The trial judge said in pertinent part:

> "During argument in chambers the State reiterated its position as set forth in its affidavit that there exists an actual conflict of interest. The respondent countered that his clients to date have not accepted the State's offer of immunity and therefore no conflict at all existed among his clients. Both parties relied upon Professor Peter W. Tague's article *Multiple Representation Targets and Witnesses During a Grand Jury Investigation*, 17 American Criminal Law Review 301 (1980), to

support their case. After a thorough study of this article and the other cases cited by counsel, I will DENY the State's Motion to Disqualify [the] Attorney . . . for the following reasons:

"There are two major weaknesses in the State's argument which greatly disturbs the court. First and foremost, the types of immunities offered to the respondents in this case simply do not exist in Maryland. Use immunity and derivative use immunity were created in the federal system and have no application to this particular case. At best, the State may offer a witness immunity from prosecution for specific offenses which are enumerated in the Annotated Code of Maryland. However, the State has not indicated that their offer of immunity falls within the ambit of the Maryland statutes. Thus, the State is basically offering the respondents an illusory promise not to prosecute them in return for their testimony.

"Secondly, and just as disturbing is Professor Tague's comments that courts have rarely granted these motions except in certain special sets of circumstances. They are: (1) where the counsel is involved in egregious conduct, (2) where the counsel was the target of the investigation and his clients were possible witnesses against him and (3) where a state rule which barred disclosure of a witness' testimony would have created tension for counsel who was obliged to inform Client B of the testimony of Client A. The case here does not remotely resemble, in the widest of imaginations, the situations cited above. Here, the attorney is not involved in any egregious conduct nor is he a target of the investigation. Certainly, Maryland has no court rule which would require the attorney to disclose a client's testimony, and even if Maryland has such a rule, the clients here have refused the offer of immunity. To grant the State's Motion against this background would be the ultimate indication that

the grisly confabulation of America in Orwells' *1984* looms ever so near to reality."

The State appealed to the Court of Special Appeals. We issued a writ of certiorari prior to consideration of the case by the latter court.

## II

With certain limited exceptions not applicable to this case, appeals from circuit courts are limited to ones from final judgments by Maryland Code (1974) § 12-301, Courts and Judicial Proceedings Article. Hence, no doubt proceeding upon the theory that the best defense is an offense, the attorney in question seeks to dismiss the State's appeal as not from a final judgment.

We have consistently held that a final judgment from which an appeal will lie is one which settles the rights of the parties or concludes the cause. *Brooks v. Ford Motor Credit Co.,* 261 Md. 278, 280, 274 A.2d 345 (1971); *Tvardek v. Tvardek,* 257 Md. 88, 92, 261 A.2d 762 (1970); and *Hillyard Constr. Co. v. Lynch,* 256 Md. 375, 379, 260 A.2d 316 (1970).

In this case the proceeding consisted only of a motion to disqualify the attorney in question. Once the motion was denied there was nothing more to be done in this particular case. There was nothing else before the court. There was nothing pending. Hence, we conclude that the order of the trial judge here settled the rights of the parties and terminated the cause. Thus, it was a final judgment. *Cf. Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 394 A.2d 801 (1978).

## III

Since a large part of the argument of the State here is based upon its mistaken belief as to the efficacy of its attempted grant of immunity to one of the witnesses, we take occasion to quote from what Judge Moylan said for the Court of Special Appeals in *Bowie v. State,* 14 Md. App. 567, 287 A.2d 782 (1972):

"There is no inherent, common law power in the State's Attorney or in the Grand Jury or in the judge or in anyone else to confer immunity from prosecution. Immunity is exclusively a creation of statute and can only exist where a statute has brought it into being. Maryland has no general immunity statute. There are limited statutory provisions providing for the granting of immunity for certain specific crimes. See, for example, Article 27, Section 23 (Bribery of Public Officials); Article 27, Section 24 (Bribery in Athletic Contests); Article 27, Section 39 (Conspiracy to Bribe); Article 27, Section 262 (Gambling); Article 27, Section 371 (Lottery); Article 27, Section 400 (Obtaining Liquor by Minors); Article 27, Section 540 (Sabotage); Article 33, Section 26-16 (c) (Fair Election Practices); and see *State v. Comes,* 237 Md. 271; *State v. Panagoulis,* 3 Md. App. 330 [, *aff'd* 253 Md. 699, 253 A.2d 877 (1969)]. None of those apply to the case at bar. It is universally recognized that, absent a statutory grant of power, the prosecuting attorney is not entitled, solely by virtue of his office, to confer immunity upon a witness. 21 Am.Jur.2d, *Criminal Law,* § 150, 'Who may grant immunity'; 8 Wigmore, *Evidence* (McNaughton Edition 1961), § 2281, 'Expurgation of criminality: ... Statutes granting amnesty, indemnity or immunity from prosecution for the offense: In general'; 1 *Wharton's Criminal Law and Procedure* (Anderson Edition), § 165, 'Immunity from Prosecution'; 4 Jones, *Evidence,* § 862, 'Immunity from Conviction — Promise of Prosecuting Attorney'; McCormick, *Evidence,* § 135, 'Termination of Liability to Punishment: Immunity Statutes'; 22 C.J.S., *Criminal Law,* § 46 (2), 'Constitutional and Statutory Provisions for Immunity'; *United States v. Ford,* 99 U.S. 594. See also the thorough discussion in *Apodaca v. Viramontes,* 53 N.M. 514, 212 P.2d 425, 13 A.L.R.2d 1427, and the excellent annotation

thereto, 'Power of prosecuting attorney to extend immunity from prosecution to witness claiming privilege against self-incrimination,' 13 A.L.R.2d 1439." 14 Md. App. at 575-76.

The court went on to say in n. 4:

"4. . . .

"In articulating very forcefully the universal proposition that the power to grant immunity is not inherent in any officer, in any branch of government, but can only be conferred by explicit provision of constitution or statute, then Chief Justice Cardozo, of the New York Court of Appeals, said in *Doyle v. Hofstader,* [257 N.Y. 244,] 177 N.E. 489, 495 [(1931)]:

'The conclusion, we think, is inescapable that a power to suspend the criminal law by the tender of immunity is not an implied or inherent incident of a power to investigate. It may be necessary for fruitful results in a particular instance, but it is not so generally indispensable as to attach itself automatically to the mere power to inquire. Whether the good to be attained by procuring the testimony of criminals is greater or less than the evil to be wrought by exempting them forever from prosecution for their crimes is a question of high policy as to which the law-making department of the government is entitled to be heard.' " 14 Md. App. at 576.

The matter is discussed in 21 Am. Jur. 2d, *Criminal Law* § 211 (1981):

"Absent appropriate statutory authorization, immunity cannot be granted by a prosecuting attorney, trial judge, grand jury, legislative investigating committee, or some other person. To justify refusal of a claim of privilege against

self-incrimination, immunity from prosecution must have its source and sanction in the law. A witness may insist that his immunity have a basis more substantial than the grace or favor of the prosecutor. However, even in the absence of specific statutory authority, there is an established practice in American courts not to prosecute an accomplice who has testified for the government in the expectation of immunity from prosecution, and such a witness is said to have an equitable claim to immunity from prosecution. Where the case is not within any statute, the general rule is that if an accomplice, when examined as a witness by the public prosecutor, discloses fully and fairly the guilt of himself and his associates, he will not be prosecuted for the offense disclosed, but he cannot plead such fact in bar of any indictment against him or avail himself of it on his trial, since it is merely an equitable right to the mercy of the executive and can only come before the court by way of application to put off the trial in order to give the prisoner time to apply to the executive for that purpose." *Id.* 387-88.

It seems plain, therefore, that the trial judge here was absolutely correct in his belief that the Attorney General was possessed of no authority to grant absolute immunity, unlike the situation in the federal system where statutory authorization exists and from whence comes nearly every case relied upon by the State. Absent an ability to confer immunity what we have here is a potential conflict of interest, not an actual conflict of interest even given the State's assertion that it has made one of the four potential witnesses a target. Whether there is a conflict is still speculative.

The traditional Maryland view of representation by one attorney of more than one individual in a criminal case has been as expressed by Judge Hammond for the Court in *Pressley v. State,* 220 Md. 558, 562, 155 A.2d 494 (1959):

> "That the same lawyer represented the two defendants is not of itself error. To show prejudice there must be revealed an actual or imminently potential conflict of interest which prevented the lawyer from impartially and adequately representing his clients. Whether there was, or not, such a conflict is a question of fact to be determined in each case." 220 Md. at 562.

To similar effect see *Johnson v. State,* 237 Md. 283, 293, 206 A.2d 138 (1965), and *McCoy v. Warden,* 234 Md. 616, 618, 198 A.2d 245 (1964). See also the excellent discussion of an actual conflict of interest by Judge Thompson for the Court of Special Appeals in *Brown v. State,* 10 Md. App. 215, 221-24, 269 A.2d 96 (1970).

The Code of Professional Responsibility is established for the guidance of the legal profession and for the protection of the public. It is not intended, however, to be a tool which a prosecutor may convert into a sword for the purpose of thwarting one of the most precious of our constitutional rights, that of being represented by counsel of one's choice. If an indictment is returned by a grand jury and that which comes out at the actual trial of the case discloses that counsel has represented conflicting interests without the knowledge and consent of his clients, then the Attorney General may file a complaint with the Attorney Grievance Commission if he feels so disposed. In the meantime, however, we are of the view that an attorney should not be disqualified upon the basis of but a conjectural potential conflict. The cases upon which the State relies have either arisen where there is a statute authorizing a prosecutor to grant use immunity or there was no room for conjecture in the case but a showing of an actual conflict.

> *Judgment affirmed; costs to be paid by the Mayor and City Council of Baltimore.*