**In the Matter of John DOE.**

**Misc. No. 76–24.**

United States District Court, E. D. Michigan, S. D.

March 19, 1976.

As Amended April 20, 1976.

---

**1164**

John W. Tapp, Detroit, Mich., for plaintiff.

Paul R. Caldwell, U. S. Dept. of Justice, Strike Force, Detroit, Mich., for defendant.

### MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This action presents the limited issue whether the court must grant immunity to a prospective Grand Jury witness who has earlier relied upon the promise of a government agent that he would not be the subject of questioning. The witness, John Doe, has moved to vacate an immunity order previously issued him. The record and Doe's uncontroverted testimony disclose the following facts.

Doe is currently being held in the Federal Correctional Institute at Milan, Michigan awaiting an appearance before the Special Grand Jury convened in this district to investigate organized crime. Doe was transferred to Milan from Oxford, Wisconsin on November 30, 1975 where he has been imprisoned on convictions for violations of 18 U.S.C. §§ 111, 371.

On January 14, 1976, Judge Cornelia Kennedy granted him immunity from prosecution under 18 U.S.C. §§ 6002–03 so that he could testify as part of an

inquiry into violations of federal narcotics laws, including heroin and cocaine sales and distribution conspiracies. Doe appeared before the Grand Jury on January 21, 1976 but refused to sign in or be sworn, requesting instead appointment of counsel. Doe's court-appointed counsel learned that one of the topics of the Grand Jury inquiry concerned Doe's voluntary surrender of 500 grams of cocaine to federal agents in January, 1973.

In late 1972, Special Agent Fred Wicklund of the F.B.I. had interviewed Doe. In January, 1973, Doe contacted Wicklund and offered to give him a pound of cocaine if he would simply confiscate the drugs without asking any questions. Wicklund explained that the F.B.I. was not interested in narcotics but that he had friends in what was then the Bureau of Narcotics and Dangerous Drugs. Doe offered to give BNDD the cocaine as long as agents asked no questions. Wicklund agreed; Doe met with the agents and surrendered the cocaine with their assurance that they would not bother him. The Special Grand Jury's inquiry into the source of this cocaine triggered in part Doe's motion to vacate the immunity order now before the court.

■ Doe moves to vacate the immunity order on the ground that for the Grand Jury to question him in violation of his agreement with federal agents would violate due process. Doe asserts that Wicklund's promise is binding upon the United States Attorney and invokes the court's discretionary and supervisory powers over the Grand Jury to protect his interest in the fair administration of justice. The government urges that, before Doe may lay claim to a violation of his right to due process for the government's broken promise, he must demonstrate some prejudicial reliance upon it. For the reasons which follow, the court holds that judicial integrity and the interests of justice dictate vacation of the immunity order.

■ The immunity statute, 18 U.S.C. § 6003, provides that a United States District Court shall issue an immunity order when requested by the United States Attorney upon approval of the Attorney General and another designated official. The United States Attorney may request the order when in his judgment the testimony of a witness may be necessary to the public interest and when the witness has refused or is likely to refuse to testify under the Fifth Amendment. The court's duties in granting the requested order are largely ministerial and when an order is properly requested the judge has no discretion to deny it. *See United States v. Leyva*, 513 F.2d 774, 776 (5th Cir. 1975). However, the court may exercise its discretion in denying an immunity order in the face of a violation of a witness' constitutional rights. *In Re Baldinger*, 356 F.Supp. 153, 170 (C.D.Cal.1973); Hearings on H.R. 11157 & H.R. 12041 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 91st Cong., 1st Sess., ser. 14, at 69 (1969).

■ Apart from the immunity statute, the court plays a general supervisory role in the fair administration of justice. *United States v. Rodman*, 519 F.2d 1058, 1060 (5th Cir. 1975); *cf. Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1959); *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). Moreover, the court has a residuum of supervisory power over the Grand Jury and a responsibility to curb its improper use. *United States v. Dionisio*, 410 U.S. 1, 9, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 76 (1973); *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626, 643 (1972).

The framework for examining the government's promise to Doe is provided by cases dealing with promises made in negotiation of guilty pleas, principally *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In that case, the defendant agreed to enter a guilty plea in exchange for the government's promise not to make a sentence recommendation. The government breached this promise inadvertently at the sentencing hearing. The court held

that the government's failure to afford the defendant the benefit of his bargain invalidated the plea even though the sentencing judge stated that he was not influenced by the government. *Id.* at 262, 92 S.Ct. at 498, 30 L.Ed.2d at 433. *See also United States v. Ewing,* 480 F.2d 1141 (5th Cir. 1973) (breach of government's promise not to oppose probation); *United States v. Carter,* 454 F.2d 426 (4th Cir. 1972) (breach of promise not to prosecute given in return for information); *United States v. Barrett,* 390 F.Supp. 1022 (D.S.C.1975) (promise of special consideration in return for defendant's cooperation).

This case does not arise in a guilty plea context. However, judicial integrity and "the interests of justice", both themes of *Santobello,* would be offended if the court ratified the government's broken promise to Doe by reaffirming the immunity order. For whatever reason, Doe agreed to surrender contraband in return for immunity from questioning. Federal agents agreed and accepted the cocaine. The government may not now breach this promise with the court's aid by substituting immunity from prosecution for immunity from questioning.

■ Neither may the government insist that Doe demonstrate some prejudice before claiming a violation of his rights in the government's broken promise. No prejudice, apart from that suffered by the administration of justice, was apparent in *Santobello.* Moreover, Doe has alleged that his testimony on the subject in dispute will endanger his life. Although fear of harm does not excuse a witness from testifying before the Grand Jury, potential harm to the witness may be relevant where, as here, the witness and the government bargain beforehand to be excused from giving testimony. *Compare DuPuy v. United States,* 518 F.2d 1295 (9th Cir. 1975).

■ In this limited context the government may not rely upon distinctions between express, implied, and apparent authority among its agents in avoiding the effect of its promise.

These distinctions have meaning for the legal technician, not for the layman dealing with the "government" in his negotiations. The solution to agents who bargain away the government's rights is tighter administrative control within the executive branch. *See United States v. Carter, supra,* at 428; *United States v. Barrett,* at 1024–25.

For the foregoing reasons, the court holds that to immunize a prospective Grand Jury witness who has earlier relied upon the promise of a government agent that he would not be the subject of questioning does violence to both judicial integrity and the interests of justice. Accordingly, the order immunizing Doe is vacated insofar as the government seeks to question him about the voluntary surrender of 500 grams of cocaine to federal agents in January, 1973.

So ordered.