**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Raymond MARQUEZ, Defendant-Appellant.**

**No. 79CA0994.**

Colorado Court of Appeals, Div. I.

Dec. 3, 1981.

Rehearing Denied Jan. 14, 1982.

Certiorari Denied April 19, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, James England, Deputy State Public Defender, Denver, for defendant-appellant.

KIRSHBAUM, Judge.

Defendant, Raymond Marquez, appeals his convictions by jury of aggravated robbery and crime of violence. We affirm.

The record reveals the following pertinent facts. On July 24, 1978, an Adams County, Colorado, supermarket was robbed by two men. One of the men concealed a handgun in a folded newspaper and demanded money from a cashier. Store employees later identified defendant as this man from photographs.

Shortly after his arrest, defendant on two occasions was asked by Denver detectives if he could supply information about an unsolved homicide that had occurred in Denver a year earlier. Defendant replied that, before he would furnish such information, the Adams County charges in this case, all charges in another case in another county, and pending parole revocation charges would have to be dismissed. Subsequently, a Denver police officer informed defendant that if a homicide charge was filed as a result of defendant's information, and if he was willing to testify at any trial which might ensue, then the Denver Police Department would arrange to have the charges dropped in those cases. Defendant then made a formal statement implicating one Freddie Diaz in the homicide. At defendant's request, these meetings occurred in the absence of defense counsel.

The Denver police officers discussed defendant's demands regarding this case with an Adams County Deputy District Attorney. Although the deputy district attorney refused to make any commitment until defendant actually testified in court, he did assure the officers of his cooperation in their attempts to solve the Denver homicide case.

In October 1978, the parole revocation proceeding against defendant was dismissed and the parole officer requested defendant to continue his cooperation with the Denver Police Department. The Adams County prosecutor with whom the Denver officers had previously discussed defendant's situation was present and nodded affirmatively while this conversation was taking place. Defendant subsequently provided the police with additional information which led to the arrest of Freddie Diaz in connection with the homicide case.

Shortly after the preliminary hearing in the homicide case filed against Freddie Diaz, two Denver Deputy District Attorneys visited defendant and advised him that a different Adams County Deputy District Attorney, assigned to prosecute this case, would not agree to a dismissal of the robbery charges. They also informed defendant that even if he testified in the Diaz murder trial, they could not require Adams County officials to dismiss these charges. Defendant then reiterated his willingness to testify in accordance with his prior agreement, but was not called to testify at Diaz's preliminary hearing.

Thereafter, defendant was tried and convicted in this case. At no time prior to his conviction did defendant inform his attorney of the foregoing events. However, after his conviction, a Denver police officer informed the trial court by letter that in the officer's opinion Adams County prosecutors had reneged on an agreement to dismiss these charges against defendant. After a lengthy post-trial hearing, the trial court concluded that although Adams County officials had acted improperly, defendant was not entitled to dismissal, but in equity, was entitled to a greatly reduced sentence. In addition, the trial court recommended that the sentence be served outside Colorado.

I.

Defendant first contends that, under constitutional "due process" concepts, he is entitled to specific performance of the agreement to dismiss the charges against him in this case. Recognizing that a prosecutor has no authority to dismiss pending charges in the absence of trial court approval,

Crim.P. 48(a); *Turner v. District Court*, 188 Colo. 146, 533 P.2d 498 (1975), defendant asserts that *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), mandates that the trial court must require specific performance of agreements to dismiss the charges in this case. We disagree.

Negotiated agreements between prosecuting attorneys and defendants have become fixtures of contemporary American criminal justice systems. *See United States v. Quatermain*, 613 F.2d 38 (3d Cir.), *cert. denied*, 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980) (Aldisert, J., dissenting). Plea bargains, which are particularly prevalent, have been accorded varying degrees of judicial sanction and enforcement in varying circumstances. *Santobello v. New York, supra; see People v. Wright*, 194 Colo. 448, 573 P.2d 551 (1978). Agreements to dismiss pending prosecutions, distinguished from plea bargains by the absence of any element of admission of guilt, often have been deemed contrary to public policy and, hence, unenforceable. *See, e.g., Application of Parham*, 6 Ariz.App. 191, 431 P.2d 86 (1967). *Contra, People v. Reagan*, 395 Mich. 306, 235 N.W.2d 581 (1975).

■ This latter class of "informal immunity agreements," is not authorized by legislation. *Hunter v. United States*, 405 F.2d 1187 (9th Cir. 1969). Moreover, defendants possess no constitutional right to obtain immunity of any type, *Bowie v. State*, 14 Md.App. 567, 287 A.2d 782 (1972), and prosecutors have no general inherent authority to agree to refrain from enforcing the criminal laws of a state. *Giano v. People*, 30 Colo. 20, 69 P. 504 (1902). Courts which have rejected various forms of nonprosecution agreements generally rely on these principles in reaching their conclusions. *See United States v. Bethea*, 483 F.2d 1024 (4th Cir. 1973); *Application of Parham, supra.*

Courts that have enforced non-prosecution agreements rely primarily upon the due process standards articulated in *Santobello v. New York, supra. See, e.g., State ex rel. Plant v. Sceresse*, 84 N.M. 312, 502 P.2d 1002 (1972); *State v. Session*, 91 N.M.

381, 574 P.2d 600 (Ct.App.1978). Such decisions also draw upon general equitable principles. *See United States v. Lieber*, 473 F.Supp. 884 (E.D.N.Y.1979); *Hammers v. State*, 261 Ark. 585, 550 S.W.2d 432 (1977).

■ This case involves neither a plea bargain nor a grant of statutory immunity. Defendant did not plead guilty or nolo contendere to a charge. *See* § 16–7–301, C.R.S.1973 (1978 Repl. Vol. 8); Crim.P. 11(f). Nor was he compelled to incriminate himself in providing the police with information about the Denver homicide case. *See* § 13–90–118, C.R.S.1973. The Denver homicide case was completely unrelated to this case, and defendant was not a participant in the events surrounding the homicide.

In these circumstances, defendant's reliance upon *Santobello v. New York, supra*, is misplaced. There, based upon specific promises made by prosecuting officials, defendant acknowledged his guilt of a criminal offense. In so doing, he surrendered his constitutional right to a trial by jury and the panoply of procedural and evidentiary safeguards inherent in that fundamental protection against unfounded governmental accusation. Here, to the contrary, defendant did not waive any constitutional right. Nor did he in any way impair his ability to defend himself. That he divulged information about another offense committed by other parties, no doubt at some risk to himself, was expressly recognized by the trial court in the sentencing phase of this case. Under these circumstances, *Santobello v. New York, supra*, does not control. No other support is suggested for defendant's novel assertion that in the circumstances of this case he is constitutionally entitled to dismissal of his conviction.

■ We do not imply that prosecutorial conduct of the kind here alleged can never result in such deprivation of constitutional rights as to require dismissal of charges against a defendant. Prosecuting officials, no less than constables and courts, are constitutionally constrained to deal fairly with defendants in their efforts to obtain

evidence and convictions. *United States v. Bethea, supra.* Thus, trial courts may enforce prosecutorial agreements subsequently breached, even if such enforcement frustrates that aspect of public policy which vigorously demands that governmental accusations of criminal conduct be evaluated by public trial. *Santobello v. New York, supra.*

█ Here, after an extensive post-conviction hearing, the trial court concluded that dismissal was not an appropriate remedy. The trial court found, on supporting evidence, that the conduct of defendant and his attorney, as well as the conduct of prosecuting attorneys and police officials, combined to create defendant's difficulties. We conclude that the trial court did not abuse its discretion in denying defendant's request to vacate the judgment of conviction and dismiss this case.

## II.

Defendant next contends that the trial court committed plain error in failing to instruct the jury properly on the requisite culpable mental state of aggravated robbery. We disagree.

The instruction defining the elements of aggravated robbery did not specifically advise the jury of the definition of the requisite mental state. Defendant did not object to this instruction, nor to another instruction which did define the appropriate culpable mental state of "knowing" conduct and which stated that such culpable mental state was "just as much an *element* of the crime as the act." (emphasis added)

█ If the instructions, taken as a whole, adequately inform the jury of the law, no plain error is present. *People v. Travis*, 192 Colo. 169, 558 P.2d 579 (1976). We find no plain error here, where the instructions taken as a whole caused no confusion and specifically informed the jury that the requisite *mens rea* was an element of the offense. *People v. Bridges*, Colo., 612 P.2d 1110 (1980).

The case of *People v. Martinez*, Colo., 634 P.2d 26 (1981), relied upon by defendant, is misplaced. In that case, the instructions as a whole failed to inform the jury what the requisite culpable mental state was in connection with one of two offenses charged. The confusion with respect to the elemental instruction required reversal of the conviction for that offense.

## III.

Defendant also contends that the trial court erred in admitting evidence of a similar transaction into evidence. We disagree.

Over defense counsel's objection, the trial court admitted testimony concerning a robbery of another supermarket by two men. That event took place approximately one-half hour before the robbery involved in this case. During this trial, defendant was identified as the man who concealed a handgun under a towel in the earlier robbery.

After lengthy argument, the trial court overruled defendant's objection to the admission of this evidence. The trial court initially ruled that the evidence constituted an "identification type of offense." However, in discussing with counsel the contents of the appropriate cautionary instructions to be given to the jury pursuant to the decision in *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), defendant, having objected to the admissibility of such evidence for any purpose, tendered a cautionary instruction which omitted reference to the issue of identity. The trial court then ruled that the evidence was not admissible to show identity.

In instructing the jury prior to any testimony concerning the similar transaction, the trial court stated that evidence of the earlier "transaction or offense" was being offered to prove plan, scheme, design, motive, and intent. Alleging that use of the term "offense" was prejudicial, defendant moved unsuccessfully for a mistrial. The substantially identical cautionary instruction given at the conclusion of the evidentiary portion of the trial did not contain the word "offense." Another final instruction informed the jury that the question of identification had been raised by the defendant.

Contrary to the trial court's ruling, the evidence in question was admissible on the issue of identity. *People v. Casper*, Colo.App., 620 P.2d 48 (1980) (*cert. granted* December 8, 1980). While the trial court's instruction was not complete, we find no reversible error here where the evidence was properly admissible to show plan, scheme, or design insofar as such concepts relate to the ultimate issue of identity. *See, e.g., People v. Crespin*, Colo.App., 631 P.2d 1144 (1981). We also conclude that, in view of the written instructions received by the jury, the trial court's improper reference to an "offense" in its initial oral instruction did not so prejudice defendant as to require reversal of the jury's verdict. *Howe v. People*, 178 Colo. 248, 496 P.2d 1040 (1972).

Judgment affirmed.

COYTE and STERNBERG, JJ., concur.