**John DOE, Plaintiff,**

v.

**UNITED STATES of America, William French Smith, United States Attorney General,**

**and**

**James Marquez, United States Attorney for the District of Kansas, Defendants.**

**Civ. A. No. 82–1223.**

United States District Court,
D. Kansas.

March 19, 1982.

Marvin Pendergraft, Wichita, Kan., for plaintiff.

Jackie Williams, Asst. U. S. Atty., Wichita, Kan., for defendants.

## ORDER DENYING TEMPORARY RESTRAINING ORDER

THEIS, District Judge.

This matter is before the Court for decision on plaintiff's motion for a Temporary Restraining Order, preventing the United States from filing a criminal information or from submitting his alleged criminal conduct to the Grand Jury for an indictment.

When plaintiff was vice president of a certain bank, he was about to be indicted for certain of his activities there. He offered to implicate several of his peers in exchange for the Government's promise not to prosecute. A copy of that agreement is attached as Exhibit A. The agreement required that sufficient information result from plaintiff's cooperation to sustain criminal charges against prospective defendants. Whether enough information was developed to file charges or present cases to the Grand Jury was left solely to the judgment of the United States Attorney's office.

Plaintiff now alleges the United States did not proceed to adequately investigate and develop the cases in good faith, and has not lived up to its end of the bargain. Therefore, plaintiff wants this Court to enforce the alleged agreement by enjoining the Government from bringing any criminal action against plaintiff. Plaintiff relies upon *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and subsequent cases relying thereon. In *Santobello*, petitioner entered an agreement with the prosecutor to plead guilty to a lesser included offense, in exchange for which the prosecutor agreed to make no recommendation as to sentencing. A recommendation was made by another attorney in the office who was unfamiliar with the plea bargain. The Supreme Court held that such an agreement had constitutional implications, and was enforceable by the petitioner to prevent a sentence for a greater offense and penalty.

In *Petition of Geisser*, 554 F.2d 698 (5th Cir. 1977), petitioner sought to specifically enforce a plea agreement which required the Justice Department to employ its best efforts to prevent her extradition to Switzerland. The Court determined that such efforts had not been made, and remanded the case for further proceedings, allowing the Attorney General time to make a better effort to convince the State Department to prevent the extradition.

In *In re Doe*, 410 F.Supp. 1163 (E.D.Mich. 1976), petitioner had delivered a pound of cocaine to the Bureau of Narcotics and Dangerous Drugs in exchange for a promise no questions would be asked. Petitioner was later subpoenaed to appear before a Grand Jury and granted immunity. That immunity order was vacated "insofar as the government seeks to question him" about the cocaine he voluntarily surrendered.

In *Santobello* and *Geisser*, the party seeking to enforce their agreements with the Government had bargained away constitutional rights, including the right to remain silent, the right to jury trial, and the presumption of innocence. It was this quality which made their pacts reviewable by the courts. In *Doe*, the court based its review of the agreement upon the immunity statute, 18 U.S.C. § 6003, and granted the relief sought by limiting the order of immunity under that statute. It also found authority in its general supervisory role in the fair administration of justice and its residuum of supervisory power over the Grand Jury. Other related cases in this legal area are: *In re Wellins*, 627 F.2d 969 (9th Cir. 1980) (promise to keep statements confidential does not preclude calling a grand jury, but no questions about statements to agreement); *United States v. Carter*, 454 F.2d 426 (4th Cir. 1972) (if promise made and relied upon in incriminating self and others, Government should be held to abide by its terms).

In the case at bar there is no immediate threat to plaintiff's constitutional rights, nor is any alleged. If any statements have been obtained from plaintiff without knowing and voluntary waiver of his Fifth Amendment rights, or any other rights become threatened, that can be dealt with before or during any trial which may occur. Plaintiff can also raise the contract as a defense in any prosecution which might violate it. *United States v. Sanderson*, 498 F.Supp. 273 (M.D.Fla.1980). Therefore, plaintiff is not without remedies if his version of the agreement is upheld by a preponderance of the evidence.

The irreparable harm alleged by plaintiff is that certain contracts he executed with the United States Postal Service after he entered the agreement with defendants are subject to cancellation upon the filing of any information or indictment, regardless of whether he is later convicted. This is not the kind of harm which fits the meaning of irreparable harm and might warrant injunctive relief. If it were, a potential grand jury target could always manufacture some irreparable harm. It is particularly noteworthy that plaintiff was already aware of his potential difficulties at the time he entered the contracts. Finally, it has always been held by systems of law that the opprobrium of accusation, painful as it may be, is not legal harm.

The law enforcement and prosecutorial functions entrusted to the United States Attorneys and the Department of Justice are important duties to society. They are powers constitutionally and statutorily delegated to the Executive Department in our three-tiered separation of powers in governmental structure. They cannot lightly be tampered with by the courts. As a matter of important social and legal policy, the federal courts should not enter upon the business of determining in advance who can be the subject of a criminal information or indictment and who cannot. Here, the plaintiff would have the Court weigh in advance the credibility of the facts involved and restrain the initiation of a proper and legal function of the Department of Justice, whose discretion was quite properly enunciated in the written agreement reserving decision to the United States Attorney's office. The courts do have a duty to exercise their general supervisory role in the fair administration of justice, and to be willing to exercise their residuum of supervisory powers over the Grand Jury.

In all the reported cases found, the judicial relief requested or given is after the event, i.e., the accusation, the trial, sentence, or other order. The constitutional function of indictment or other legal form of accusation is simply that—an accusation. The validity of such accusation is the strict judicial function, not its prevention or inhi-

bition. No reported case is found in which the injunctive powers of a federal court have been used to prevent federal prosecutorial functions. It is further a judicial guide of conduct that the powers of injunction are to be sparingly used, and then only upon proof of certain legal criteria which are presently absent. Such power may be used in unusual cases of constitutional deprivation in state criminal cases to forbid use of state prosecutorial or judicial power under the constitutional mandate of supremacy of constitutional federal power over state power. However, even then under the teaching of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its judicial progeny, its use is strictly monitored. This Court declines to exercise such judicial power in the instant case.

IT IS THEREFORE ORDERED that plaintiff's motion for injunctive relief is hereby denied.