PEOPLE v GALLEGO

Docket No. 76904. Argued March 3, 1987 (Calendar No. 7). Decided
June 1, 1988.

Luis Gallego was charged with delivery of cocaine. The 48th
Judicial District Court, Gus Cifelli, J., dismissed the charges on
the ground that the defendant had made an agreement with
certain undercover police officers, precluding his prosecution.
The Oakland Circuit Court, Frederick C. Ziem, J., affirmed,
concluding that the integrity of the state's criminal justice
system rested on the enforcement of agreements entered into
by law enforcement officials. The Court of Appeals, D. E. HOL-
BROOK, JR., P.J., and ALLEN and THOMAS, JJ., reversed, holding
that the police lacked authority to bind the prosecutor to a
pledge of immunity and that the defendant did not rely to his
detriment on the agreement, and finding that exclusion of
illegally seized evidence was a more appropriate remedy than
dismissal (Docket No. 78625). The defendant appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice
RILEY, and Justices BOYLE and GRIFFIN, the Supreme Court
*held:*

The defendant is not entitled to specific performance of the
unauthorized, non-plea agreement with the police which pro-
vided that he not be prosecuted. On the facts of this case,
suppression or exclusion of the written agreement made with
the police and of evidence of the money used to buy the cocaine
is the more appropriate remedy.

1. The police have neither the authority to withhold prosecu-
tion nor the power to grant immunity. Thus, enforcement by a
court of an unauthorized promise by the police not to prosecute
would undermine the accountability built into the prosecutorial
function by implicitly recognizing the propriety of allowing
non-elected, non-prosecutorial public officials to administer an
ad hoc system of criminal justice. In addition, the acceptance of

REFERENCES

Am Jur 2d, Criminal Law §§ 210-222.

Enforceability of agreement by law enforcement officials not to
prosecute if accused would help in criminal investigation or
would become witness against others. 32 ALR4th 990.

such agreements would provide a potential for endless litigation.

2. In this case, a grant of specific performance would amount to a preclusion of an otherwise valid prosecution and would advance no legitimate interest. The promise of immunity appears to have stemmed not from legitimate considerations usually associated with a plea bargain or an authorized grant of immunity, such as promoting prompt and efficient disposition of criminal cases or securing the conviction of other malefactors, but rather from less worthy considerations such as the embarrassment resulting from the loss of the money used by the officers to buy the cocaine. Specific performance is not required to restore the defendant to the position he enjoyed prior to making the agreement because exclusion of the evidence of the money used in the drug transaction and the suppression of the written agreement, obtained in alleged violations of the defendant's Fourth and Fifth Amendment rights, correct any prejudice suffered.

Affirmed.

Justice LEVIN, concurring, stated that, absent evidence that the police were authorized by the prosecutor to promise immunity or not to prosecute, a police officer's promise cannot be enforced. While the police exercise charging discretion in deciding whether to make an arrest, issue a citation, or seek a warrant, the ultimate charging discretion is confided solely to the prosecuting attorney and the Attorney General. A police officer's decision not to arrest, cite, or seek an arrest warrant thus may be countermanded by the prosecutor. A different question might be presented if evidence were to be adduced that by words or conduct the prosecutor had clothed state police officers working in the area of narcotics enforcement with the authority to make promises of nonprosecution to offenders in exchange for evidence, coöperation, or other assistance.

In this case, no evidence was offered that the police officer who entered into the agreement not to prosecute was expressly authorized or clothed with apparent authority to do so by the prosecutor. Thus, the judgment of the Court of Appeals should be affirmed.

Justice ARCHER, concurring in part and dissenting in part, stated that in future cases the decision whether to prosecute a defendant should rest within the sound discretion of the prosecuting attorney. However, on the facts of this case, because of the lack of precedent to guide the defendant's lawyer, the

agreement between the defendant and the police should have been honored.

Justice CAVANAGH, joined by Justice ARCHER, dissenting, stated that when a promise is made by the state to a person involved in the criminal justice system, the standards of substantive due process hold the state to a high duty to keep its promise. It is fundamentally unfair for the state to create and then destroy a defendant's expectations while reaping the benefit of its bargain. The result reached by the majority, that an unauthorized agreement between a defendant and the police providing for immunity from prosecution does not entitle the defendant to specific performance, not only sacrifices the standard of fundamental fairness in our judicial system, but damages the integrity of the criminal justice system as well.

143 Mich App 639; 372 NW2d 640 (1985) affirmed.

CRIMINAL LAW — IMMUNITY FROM PROSECUTION — UNAUTHORIZED AGREEMENTS.

> A defendant was not entitled to specific performance of an unauthorized, non-plea agreement with police which provided that he not be prosecuted where, on the facts of the case, suppression or exclusion of the agreement and certain evidence was the more appropriate remedy.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*James W. Burdick* for the defendant.

Amicus Curiae:

*James Schuster* for the American Civil Liberties Union.

BRICKLEY, J. This case of first impression requires us to decide whether defendant, aggrieved by the breach of an unauthorized, non-plea agreement with the police, providing that he not be prosecuted, is entitled to specific performance of that agreement. We hold that he is not and that,

on the facts of this case, suppression or exclusion of the written agreement made with the police and of the "buy money" is a more appropriate remedy. Thus, we affirm the judgment of the Court of Appeals.

I

This interlocutory appeal arises out of a drug transaction involving defendant Luis Gallego, his codefendant Albert Bueno, the Oakland County Narcotics Enforcement Team, and the Federal Drug Enforcement Agency (DEA). On the evening of February 1, 1982, Gallego and Bueno met with Michigan State Police Trooper Terry Saldana. After exchanging approximately $33,000 in cash for a pound of cocaine, Saldana gave the "buy-bust" signal to the police surveillance crew. Saldana briefly lost sight of Gallego. Unfortunately, after the police tackled Gallego as he attempted to climb a snowbank, they discovered he no longer had the $33,000 in his possession. The police began a search for the money but the search proved fruitless.

Eventually, labor law attorney John Lyons, summoned by Gallego's sister-in-law, appeared at the scene. During the course of conversations with officers at the scene, DEA agent Dodson indicated to Lyons that he did not want to pursue a federal prosecution against Gallego, but only wanted the money back. Apparently, state police undercover agent John Smiley was hesitant to agree to immunity in exchange for the $33,000. After consulting with a superior officer at the scene, however, he too agreed that the state would not prosecute if defendant returned the money. Neither the Oakland County Prosecutor nor the United States Attorney authorized or approved the agreement.

Executed in writing and signed by agent Dodson, officer Smiley and John Lyons, the agreement provided as follows:

> Special Agent William R. Dodson of the Dept. of Justice Drug Enforcement Admin. Detroit, MI hereby states that Drug Enforcement Admin. will not charge Luis Fernando with any violation of the Federal Controlled Substance Act that was committed on Feb. 1 and 2 in Oakland County. The drug offense in particular is the delivery of one pound of cocaine by Fernando to Michigan State Police officer on Feb. 1, 1982 for $30,000.
>
> In return of for this offer Luis Fernando will return $30,000 of the Michigan State Funds to the Michigan State Police prior to Feb. 2, 1982 6:00 A.M. The $30,000 was given to Fernando by a Michigan State Police officer for the purchase of one pound of cocaine on Feb. 2, 1982.
>
> If Fernando does not return the money $30,000 to the M.S.P. by Feb. 2, 1982 6:00 A.M. this offer is void. The above offer allos also holds true for any Michigan State charges against Fernando that were committed on Feb. 1 & 2, 1982. [*People v Gallego,* Defendant-Appellant's Brief on Appeal, Appendix, p 2a(i).]

Subsequently, Gallego informed the officers of the money's location; they retrieved the money and released defendant.

Several months later, the police sought a warrant against codefendant Bueno, but not Gallego. At that time, the above agreement came to the attention of the Oakland County Prosecutor. The prosecutor did not feel bound by the agreement and consequently charged defendant with delivery of cocaine. See MCL 333.7401(1), (2)(a)(ii), 333.7214(a)(iv); MSA 14.15(7401)(1), (2)(a)(ii), 14.15(7214)(a)(iv).

Upon conclusion of his preliminary examination,

defendant moved for dismissal of the charges on the basis of the agreement he made with undercover officers. The district court judge, the Honorable Gus Cifelli, granted defendant's motion and dismissed the charges. The Oakland Circuit Court affirmed the dismissal, concluding that the integrity of the state's criminal justice system rested on the enforcement of agreements entered into by law enforcement officials.

On appeal by the people, the Court of Appeals reversed the judgment of the circuit court, concluding that the police lacked the authority to bind the prosecutor to a pledge of immunity and that defendant did not rely to his detriment on the agreement. Although concerned about the conduct of the police and the ability of the exclusionary rule to protect defendant's rights, the Court ultimately found that exclusion of the illegally seized evidence was a more appropriate remedy than dismissal.

> We are concerned that the exclusionary rule will not adequately protect defendant's rights in this situation. The officers wanted the return of the money more than they wanted to prosecute defendant and, if faced with a similar situation in the future, would probably do the same thing. At the same time, this violation of defendant's rights should not erase, in the eyes of the law, evidence of defendant's criminal activity which was properly obtained and not traceable to this violation of his rights. Moreover, the people would be barred from prosecuting if all the evidence against the accused was traceable to the unauthorized pledge of immunity from the officers. See [In re] Doe, [410 F Supp 1163 (ED Mich, 1976)].
>
> Dismissal is a drastic remedy seldom available.
>
> "Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to

barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book." *United States v Blue,* 384 US 251, 255; 86 S Ct 1416; 16 L Ed 2d 510 (1966).

Accordingly, we find that the proper remedy is to exclude the illegally seized evidence. As the agreement amounts to an involuntary confession, *People v Paintman,* 139 Mich App 161; 361 NW2d 755 (1984), such agreement may not be utilized as evidence or for impeachment purposes. *People v Switzer,* 135 Mich App 779; 355 NW2d 670 (1984). [*People v Gallego,* 143 Mich App 639, 642-643; 372 NW2d 640 (1985).]

Defendant then applied for, and this Court granted, leave to appeal.[1]

II

The plea agreement cases are the natural starting point for any analysis of agreements between criminal defendants and law enforcement officials. In *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), a seminal decision in the area of plea bargains, the United States Supreme Court recognized a constitutional right to relief, apparently rooted in the Due Process Clause of the federal constitution,[2] for the violation of an

[1] 425 Mich 851 (1986).

[2] In *Mabry v Johnson,* 467 US 504; 104 S Ct 2543; 81 L Ed 2d 437 (1984), the Supreme Court clarified what it left ambiguous in *Santobello:* the constitutional provision forming the basis for relief for violated plea agreements.

[In *Mabry,*] [t]he Court for the first time tied its holding to a specific constitutional provision, citing *Santobello* as an illustration of the proposition that "only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause?" [Note,

authorized plea agreement. Yet in remanding to the state court for a remedy determination, the Court left unanswered the question whether it recognized a constitutional right to a particular remedy such as specific performance.

> *Santobello* [stood] for the proposition that state and federal courts alike have a constitutional obligation to give some relief to defendants aggrieved by broken plea agreements. But the decision [left] the lower courts without clear guidance to decide what kinds of remedies are appropriate, and whether any particular remedy is ever constitutionally required in any given case. [Westen & Westin, *A constitutional law of remedies for broken plea bargains,* 66 Cal L R 471, 476 (1978).]

In *Mabry v Johnson,* 467 US 504; 104 S Ct 2543; 81 L Ed 2d 437 (1984), however, the Court indicated, in dicta, that in *Santobello* it had not held that the constitution compelled specific performance as the remedy for the breach of a plea agreement.

> Indeed, even if [defendant's] plea were invalid, *Santobello* expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea; the Court made it clear that permitting Santobello to replead was within the range of constitutionally appropriate remedies. [*Mabry, supra* at 510, n 11. Citations omitted.]

Thus, *Santobello* certainly does not support the

*Where promises end: Prosecutorial adherence to sentence recommendation commitments in plea bargains,* 52 U Chi L R 751, 754-755 (1985), citing *Mabry, supra* at 509.]

proposition that the constitution[3] compels specific performance as the remedy for the breach of an unauthorized, non-plea agreement.

In addition, we reject the implication that this Court's decision in *People v Reagan,* 395 Mich 306; 235 NW2d 581 (1975), mandates specific performance. *Reagan* is clearly distinguishable from the case at bar. In *Reagan,* this Court granted the defendant specific performance of an agreement, reneged on by the prosecutor, which essentially promised the defendant he would not be prosecuted if he passed a polygraph examination.[4] The agreement in *Reagan,* however, unlike the agreement in the case at bar, was authorized and involved the input of the prosecutor. Moreover, even though this Court granted the defendant specific performance in *Reagan,* our decision did not rest on constitutional grounds. Therefore, we conclude that neither *Santobello* nor *Reagan* represent au-

[3] Neither defendant nor amicus curiae, the American Civil Liberties Union, argues that the Michigan Constitution compels specific performance of defendant's bargain with the police.

[4] In *Reagan,* the prosecutor agreed to dismiss the prosecution against the defendant if he passed a polygraph examination administered by the Michigan State Police. The defendant initially "passed" the examination, and so the prosecutor's office prepared an order of nolle prosequi. The order indicated that the defendant had passed two polygraph examinations and that the prosecution did not object to discontinuing the prosecution against the defendant. Thus, when the trial judge signed the order of nolle prosequi, he knew the reasons for the prosecution's decision to seek the order. The trial court's entry of that order then "represented necessary fruition of the agreement and approval of its stated basis as a matter of law and fact." *Id.* at 312-313 (citation omitted).

Subsequently, however, the prosecution learned of the potential unreliability of polygraph examination and the preference for serum testing in the case of schizophrenics. The prosecution informed the defendant that it would only honor its bargain with him if he agreed to serum testing. When the defendant refused, the prosecution filed a new complaint on the original charges. The defendant moved to quash the information on the basis of the bargain struck with the prosecution, but the trial court denied the defendant's motion. A jury convicted the defendant as charged and the Court of Appeals affirmed. We reversed the defendant's conviction and discharged him.

thority for a grant of specific performance in this case. And we are not persuaded that such a remedy should now be employed.

### III

We base our decision to deny defendant specific performance on the fact that the police lacked the authority to make a binding promise of immunity or not to prosecute.[5] The case at bar involves a non-plea agreement for which specific performance amounts to preclusion of an otherwise valid prosecution, and the Court has available an alternative remedy short of specific performance, i.e., suppression, which essentially restores defendant to the position he enjoyed prior to making the agreement in question with the police.

The absence of authority of the police in this matter is significant for several reasons. To begin with, by enforcing the unauthorized promise made to defendant, this Court would undermine the accountability built into the prosecutorial function. Unlike a Michigan State Police officer, the Oakland County Prosecutor is an elected official and thus accountable to the county's electorate for his actions. Since the police possess neither the authority to withhold prosecution nor to grant immunity, no formal system exists by which to check the potentially unbridled discretion the police would possess if allowed to make binding promises precluding prosecution. The potential for abuse seems obvious.

A related concern is the potential for "endless litigation and confusion" which unauthorized

---

[5] We deem it unnecessary to a resolution of this case to determine whether the police promised defendant transactional immunity or merely agreed to not prosecute him in exchange for the return of the state's buy money.

agreements would create. As the court noted in *State v Hargis,* 328 So 2d 479, 481 (Fla App, 1976):

> The content of verbal agreements, such as the one before us, will provide a prolific source of litigation. The recollection of the parties will be imperfect. Misconstruction is easy. A careless word, a misconstrued statement, or a distorted expression will erupt into litigation.

Fortunately, we are not confronted with the problem of deciphering the terms of the agreement in this case. Yet a number of cases on both the federal and state level, in which courts were faced with unauthorized bargains whose terms were at issue, testify to the bountiful source of litigation that unauthorized bargains, such as in the case at bar, provide. See, e.g., *United States v Weiss,* 599 F2d 730, 735-738 (CA 5, 1979), reh den 603 F2d 860 (1979), *United States v Stevens,* 543 F Supp 929, 947-948 (ND Ill, 1982), *State v Hargis, supra* at 480-481, *Bowie v State,* 14 Md App 567, 570-571; 287 A2d 782 (1972), and *State v Crow,* 367 SW2d 601, 605 (Mo, 1963). Even if the terms of an agreement are clear, however, the potential for "endless litigation" is present when a law enforcement official acts without authority and without knowledge of all the legal ramifications of his promises.[6]

---

[6] Several times during questioning at the preliminary examination, state police undercover agent John Smiley admitted that he was unsure of the legal ramifications of the agreement made with defendant.

> *Q.* At the time you entered into the agreement did you enter into it in good faith as a police officer and a gentleman, or did you enter into it not caring whether you kept it or not?
> *A.* I entered into it in good faith, but the fact that I did not know whether it was a legal agreement was still in my mind.
> *Q.* Okay.
> *A.* So, I was not sure whether it was legal. [*People v Gallego,*

In addition, enforcing the unauthorized promise made by the police to defendant raises the question of the logical limits of the power of the police to control the criminal justice system. If the police may make unauthorized, yet binding promises that preclude prosecution, why could they also not make binding plea bargains or sentence agreements? Thus, in granting defendant specific performance, this Court would create a dangerous precedent. By doing so, we would implicitly recognize the propriety of allowing non-elected, non-prosecutorial public officials to administer an ad hoc system of criminal justice.

A factor suggesting caution in granting defendant's request for specific performance is the fact that the instant case involves a non-plea agreement for which specific performance amounts to preclusion of an otherwise valid prosecution. To begin with, dismissal of criminal charges as a remedy for alleged police misconduct is a drastic and disfavored remedy. See, e.g., *United States v Blue, supra* at 255; *United States v Rogers,* 751 F2d 1074, 1076-1077 (CA 9, 1985). In this case, dismissal of criminal charges is even less desirable, however, because it advances no other legitimate interests. With a plea bargain, for example, a defendant may plead guilty to one or more charges in exchange for the dismissal of other charges. By negotiating such an agreement, the prosecution protects the public by guaranteeing the defendant's conviction on at least one offense and promotes the prompt and efficient disposition of criminal cases.[7] Moreover, unlike the typical immunity

Transcript of preliminary examination, Testimony of John Smiley, pp 94-95.]

See also *id.* at 81, 88-89.

[7]    Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for

agreement, sacrificing defendant's prosecution in this case was not necessary in order to secure the prosecution and conviction of other malefactors.

> The basic theory of "immunity," reduced to its simplest terms, is plain: Where, because of the nature of the crime or other factors, the prosecution has little or no evidence against several suspects, it may compel testimony from one of them, by granting him immunity, to be used against the others; the prosecution thereby, in practical effect, allows one person to go free in order to obtain convictions against the others—otherwise *all* must be allowed to go free. [1 Torcia, Wharton's Criminal Law (14th ed), § 78, p 381.]

Unfortunately, it appears that the decision to promise defendant immunity or not to prosecute stemmed not from those legitimate considerations involved in plea bargaining or in authorized grants of immunity, but rather from less worthy considerations such as the embarrassment resulting from the loss of the buy money.

A factor which underlies our decision to deny defendant's request for specific performance is the presence of an alternative remedy which essentially restores defendant to the position he enjoyed prior to making the agreement in question with

many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady v United States,* 397 US 742, 751-752 [90 S Ct 1463; 25 L Ed 2d 747] (1970). [*Santobello, supra* at 261.]

the police.[8] Defendant claims that he relied to his detriment on the agreement made with the police, surrendering his Fourth Amendment right against unreasonable search and seizure, his Fifth Amendment right against self-incrimination, and his constitutional right to a presumption of innocence.[9] He argues that the prejudice he suffered in relying on the agreement in question requires the Court to grant him specific performance.

Defendant's argument ignores the fact that suppression or exclusion of the written agreement and buy money "cures" his detrimental reliance.[10] In other words, specific performance is not required to restore defendant to the position he enjoyed prior to making the agreement in question with the police. Exclusion of the buy money[11] and sup-

[8] The people concede the appropriateness of suppression as the remedy for breach of the agreement with defendant. See *People v Gallego,* Plaintiff-Appellee's Brief on Appeal, p 40.

[9] Defendant also cites *In re Doe,* 410 F Supp 1163, 1166 (ED Mich, 1976), for the proposition that reliance, in and of itself, absent any showing of detriment or prejudice, suffices to demand specific performance. *Doe* involved an unauthorized, non-plea agreement in which federal agents promised Doe that he would not be required to answer any questions if he offered to turn over a large quantity of cocaine. When Judge Cornelia Kennedy granted Doe immunity from prosecution pursuant to 18 USC 6002-6003 in exchange for his testimony about drug distribution conspiracies, Doe moved to vacate the immunity order on the ground it violated the promise made to him by federal agents.

*Doe,* however, is distinguishable from the case at bar and thus, is not persuasive. First, in *Doe,* there was no alternative remedy, such as suppression, available to the court. Second, unlike the agreement in the case at bar, the agreement in *Doe* did not involve a promise providing that defendant not be prosecuted. Finally, despite dicta to the contrary, the court's opinion indicates that failure to specifically enforce the promise made would have resulted in prejudice to Doe who alleged that his testimony would endanger his life. See *Doe, supra* at 1166.

[10] By "detrimental reliance," we mean that no other remedy is available which will return defendant to the position he enjoyed prior to making the agreement at issue.

[11] Returning defendant to the position he enjoyed prior to making the agreement in question with the police does not entail returning the buy money to defendant. Defendant is not entitled to that money,

pression of the written agreement, obtained in
alleged violation of defendant's Fourth and Fifth
Amendment rights, respectively, correct any preju-
dice suffered to date by defendant. As for defen-
dant's contention that statements by the people
and the Court of Appeals have stripped him of his
constitutional right to a presumption of innocence,
we cannot agree. Our decision to deny defendant's
request for specific performance is not an adjudica-
tion of defendant's guilt; we properly leave that
determination to the trial court. Instead, our deci-
sion rests solely on the legal and policy ramifica-
tions of specific enforcement of unauthorized, non-
plea agreements made by the police, such as in the
case at bar, not on any assumptions about defen-
dant's ultimate guilt or innocence.

Since suppression or exclusion cures defendant's
detrimental reliance, specific performance is not
necessary to return defendant to the position he
enjoyed prior to making the unauthorized, non-
plea agreement at issue in this case.[12] Moreover,
we are not required, as a result of the "constable's
blunder," to place defendant in a better position
than he enjoyed prior to making the agreement
with the police. As a result, we agree with the
Court of Appeals decision to suppress or exclude
the written agreement and the buy money. Accord-
ingly, we affirm the judgment of the Court of
Appeals.

which is subject to forfeiture pursuant to MCL 333.7521(1)(f); MSA
14.15(7521)(1)(f).

[12] We are not alone in our decision to deny specific performance of
an unauthorized, non-plea agreement which provides that defendant
not be prosecuted. See, e.g., *United States v Hudson,* 609 F2d 1326
(CA 9, 1979); *Hunter v United States,* 405 F2d 1187 (CA 9, 1969);
*People v Marquez,* 644 P2d 59 (Colo App, 1981); *State v Ward,* 571
P2d 1343 (Utah, 1977), cert den and app dis 435 US 1005 (1970); *State
v Hargis, supra; Commonwealth v St John,* 173 Mass 566; 54 NE 254
(1899); see also *United States v Weiss, Bowie v State,* and *State v
Crow, supra.*

IV

In this case of first impression, defendant requests this Court to grant him specific performance of an unauthorized, non-plea agreement with the police, which provides that he not be prosecuted. We deny defendant's request for specific performance. Instead, we agree with the Court of Appeals decision to suppress or exclude the written agreement made with the police and the buy money. Thus, we affirm the judgment of the Court of Appeals.

RILEY, C.J., and BOYLE and GRIFFIN, JJ., concurred with BRICKLEY, J.

LEVIN, J. (*concurring*). I agree with the majority that as a general proposition "the police [lack] the authority to make a binding promise of immunity or not to prosecute."[1] Absent evidence that the police were authorized by the prosecutor to make such a promise, a police officer's promise of immunity or not to prosecute cannot be enforced.

In the instant case, no evidence was offered that the police officer who entered into the agreement not to prosecute was expressly authorized or clothed with apparent authority[2] to do so by the prosecutor. There being no evidence that the officer who entered into the agreement was authorized to do so, I agree that the judgment of the Court of Appeals should be affirmed.

While the police exercise, as a practical matter, a charging discretion in deciding whether to make an arrest, issue a citation, or seek a warrant,[3] the ultimate charging discretion is confided solely to

[1] *Ante,* pp 452.

[2] See 1 Restatement Agency, 2d, §§ 8 and 27.

[3] See LaFave, Arrest: The Decision to Take a Suspect Into Custody (Boston: Little, Brown & Co, 1965), p 63.

the prosecuting attorney and the Attorney General.[4] A police officer's decision not to arrest, cite, or seek an arrest warrant may thus be countermanded by the prosecutor to whom the charging discretion is confided.

Federal courts have enforced "non-plea agreement" promises of nonprosecution or other concessions made by agents of the Drug Enforcement Administration or of the Federal Bureau of Investigation[5] without evidence that a United States Attorney or the Attorney General has delegated to them authority to make such a promise. It may be that federal courts in effect take judicial notice of a working relationship between agents of the DEA, the FBI, and United States Attorneys, under the

[4] See Miller, Prosecution: The Decision to Charge a Suspect With a Crime (Boston: Little, Brown & Co, 1969), p 151. American Bar Association Standards for Criminal Justice (2d ed), The Prosecution Function, Standard 3-3.9, pp 3-53 ff.

[5] *United States v Carrillo,* 709 F2d 35 (CA 9, 1983) (indictment dismissed where the defendant coöperated with DEA agents in return for a promise not to prosecute); *United States v Rodman,* 519 F2d 1058 (CA 1, 1975) (the court dismissed indictment where Securities and Exchange Commission agents failed to perform their agreement to "strongly recommend" to the United States Attorney not to prosecute the defendant in return for his coöperation); *In re Doe,* 410 F Supp 1163 (ED Mich, 1976) (the court enforced a narcotics agent's oral promise that the defendant would not be subject to questioning; the defendant made this agreement through an FBI agent in exchange for turning over five hundred grams of cocaine); *United States v Wolf,* 601 F Supp 435 (ND Ill, 1984) (the court suppressed evidence given by the defendant to Canadian tax authorities where they promised not to give it to the Internal Revenue Service and the latter had participated in challenged conduct); *United States v Pascal,* 496 F Supp 313 (ND Ill, 1979) (the court dismissed an indictment, enforcing a DEA agent's oral agreement to recommend to the United States Attorney that defendant not be indicted in return for his coöperation). Cf. *United States v Barrett,* 390 F Supp 1022, 1024 (D SC, 1975) (sentence reduction was denied on the ground that the defendant failed to meet the burden of proving that government agents promised him "special consideration" in exchange for full coöperation—the court said that "[t]here can be no distinction between promises made by prosecutors in the Attorney General's office and promises made by agents of the Drug Enforcement Administration.")

Cf. *United States v Carter,* 454 F2d 426 (CA 4, 1972), and *United States v Sanderson,* 498 F Supp 273 (MD Fla, 1980), enforcing promises made by United States Attorneys.

aegis of the Department of Justice, and that the relationship is such that no evidence of express or apparent authority or delegation is or should be required. This Court would not, however, be justified in taking judicial notice that there is such a relationship between state police officers and the Oakland County Prosecutor.

A different question might be presented if evidence were to be adduced that by words or conduct the prosecutor had clothed state police officers working in the area of narcotics enforcement with the authority to make promises of nonprosecution to offenders in exchange for evidence, coöperation, or other assistance.

ARCHER, J. (*concurring in part and dissenting in part*). I would apply Justice JAMES H. BRICKLEY's opinion to future cases of a similar nature where a lawyer is involved in the agreement. However, on the facts of this case, without precedent to guide the lawyer advising the defendant, I join Justice MICHAEL F. CAVANAGH in his dissent.

CAVANAGH, J. (*dissenting*). This case presents a close policy question which involves the integrity of our criminal justice system. The majority holds that defendant is not entitled to specific performance of a written, signed agreement not to prosecute which had been proposed by the police. According to the majority, the more appropriate remedy for defendant is the suppression or exclusion of the written agreement and the missing money which was returned by defendant. However, rather than providing a remedy for defendant, the majority has provided a remedy for the state, and in doing so rewards it for bad faith and the failure to abide by the terms of its agreement. Because this result damages the integrity of our

criminal justice system, I must respectfully dissent.

In our criminal justice system the interests of the state are represented by the police and the prosecutor. The police conduct investigations, and should charges be brought, the prosecutor represents the state in all court proceedings. Throughout the process, from the time an individual becomes a suspect in an investigation until a defendant's conviction and sentence become final, errors that somehow could affect the prosecution of a particular individual might be made by the police or the prosecutor.

In the present case, the police might not have had the authority to propose the agreement in question. However, any distinctions between the authority of the police and that of the prosecutor mean little to a layman negotiating with the government.[1] What is important is not whether the police had the authority to make the promise, but whether the promise was in fact made.[2] Here, the written, signed agreement proposed by the police is evidence of the promise. In reliance on this promise and with the advice of counsel, defendant performed his part of the agreement.

The precept that people should keep their promises should apply to the state no less than to individuals. When a promise is made by the state to an individual involved in our criminal justice system, the standards of substantive due process hold the state to a high duty of care in keeping its promise.[3] Although the constitution may not specifically require specific performance of the agreement in this case, the principle of fundamental

[1] See *In re Doe,* 410 F Supp 1163, 1166 (ED Mich, 1976).

[2] *United States v Cook,* 668 F2d 317, 320 (CA 7, 1982).

[3] See Westen & Westin, *A constitutional law of remedies for broken plea bargains,* 66 Cal L R 471, 524 (1978).

fairness does. It is fundamentally unfair for the state to create and then destroy a defendant's expectations while reaping the benefit of its bargain.

If the police in this case made a mistake in promising defendant that he would not be prosecuted, the system should bear the consequences of that error. As noted by this Court in *People v Reagan,* 395 Mich 306, 319; 235 NW2d 581 (1975), "Law enforcement processes are committed to civilized courses of action. When mistakes of significant proportion are made, it is better that the consequences be suffered than that civilized standards be sacrificed."[4] The result reached by the majority not only sacrifices the standard of fundamental fairness in our judicial system but damages the integrity of our criminal justice system as well. Therefore, I would grant defendant's request for specific performance and reinstate the district court order dismissing the charges against defendant.

ARCHER, J., concurred with CAVANAGH, J.

---

[4] As noted by the court in *Doe,* n 1 *supra,* p 1166, "The solution to agents who bargain away the government's rights is tighter administrative control within the executive branch." The majority opinion might lead the police to make promises they know are unenforceable to gain an individual's coöperation in an investigation or prosecution. Therefore, increased control is even more necessary to protect the due process rights of such individuals.