USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1485 IN RE: GRAND JURY __________ JOHN DOE, Appellant. ____________________ ERRATA SHEET The opinion of this Court issued on May 27, 1993 is amended as follows: Page 7, III, Line 2: Sentence should read "If the government in exchange for cooperation bound itself not to ask appellant any further questions about rent, then under the case law he was not obliged to answer." May 27, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1485 IN RE: GRAND JURY __________ JOHN DOE, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ ____________________ Morris M. Goldings, Alice E. Moore, and Mahoney, Hawkes & ____________________ ________________ ___________________ Goldings on brief for appellant. ________ A. John Pappalardo, United States Attorney, Fred M. Wyshak, Jr. __________________ _____________________ and Brian T. Kelly, Assistant United States Attorneys, on brief for ______________ appellee. ____________________ ____________________ Per Curiam. Appellant has appealed from an order __________ of the district court holding him in civil contempt for refusing to testify as a witness before a grand jury. See 28 ___ U.S.C. 1826(a). The district court granted appellant's request for bail pending appeal, finding that the appeal was not frivolous or taken for delay. Id. 1826(b). ___ I. _ Appellant's relationship with the government began in July 1987 when he was served a subpoena to testify before a grand jury investigating money laundering, particularly in relation to Heller's Cafe and Michael London. Appellant, through his attorney, informed the government that he intended to assert his Fifth Amendment right against self- incrimination. The government then obtained an order of immunity under 18 U.S.C. 6002 and 6003. Prior to appearing before the grand jury, appellant and his attorney met informally with Mitchell Dembin, the assistant United States Attorney in charge of the investigation, and other law enforcement officers. At this pre-grand jury meeting, appellant's attorney advised Dembin that appellant would refuse to answer any questions -- either informally or before the grand jury -- regarding the payment of "rent."1 Appellant did provide, on an informal basis, ____________________ 1. According to the district court, "rent" is a term used to refer to extortionate payments that bookmakers have, at times, been required to make to certain organized crime figures. other information about general gambling practices directly to Dembin. According to Dembin's affidavit submitted to the district court, he had stated to appellant that he would not ask appellant any questions concerning rent before the grand jury or inquire into the identities of those running the bookmaking organization for which appellant then worked. Dembin asserts, in the affidavit, that he had made this decision on the ground that the "circumstances of [appellant's] `rent' and his current employment situation appeared to be beyond the scope of the Heller's Cafe investigation." Consequently, Dembin did not ask about rent when appellant appeared before the grand jury in early January 1988. It is undisputed, however, that Dembin was aware that the Organized Crime Strike Force was then investigating allegations that certain organized crime figures were requiring bookmakers to pay rent to them. In December 1990, appellant received a second subpoena to appear before a grand jury. At this time, Mark Pearlstein was the assistant United States Attorney involved with the grand jury proceedings. He was investigating a check-cashing business suspected of money laundering on behalf of bookmakers. A second immunity order was obtained. Appellant again met with prosecutors on an informal basis and provided them with information concerning betting practices -4- and procedures. In his affidavit, Pearlstein acknowledges that he was aware that Dembin had refrained from asking appellant about rent. He followed the same path because the subject of rent payments "was of little direct relevance to the investigation" he was conducting. Accordingly, when appellant appeared before the grand jury in January 1991, he was not asked about rent. In February 1992, appellant made a third appearance before a grand jury. According to appellant, he was informed that this was the same grand jury before which he had appeared in 1991. This time, the two United States Attorneys who questioned appellant were connected to the Strike Force and were investigating the payment of rent. As a result, appellant was questioned on this subject; he testified that he did not pay rent. Appellant did not mention, during this grand jury appearance, any agreement or promise by the government that he would not be asked such questions. Also, in January 1993, appellant testified at the trial of Michael London. Before giving his testimony, he met with the prosecutors for five to eight hours and answered many inquiries concerning betting practices and procedures; nonetheless, he was not questioned about rent. At trial, however, appellant was asked by the prosecution whether he paid rent to certain individuals. He stated, as he had before the grand jury, that he did not pay rent. After it -5- was learned that appellant had given false answers concerning rent payments (both at the 1992 grand jury and the London ______ trial), appellant was recalled to the stand in the London ______ trial. He then admitted that he had given incorrect information, but declined to identify anyone to whom he had paid rent.2 He again did not mention any agreement to the effect that he did not have to answer such questions. II. __ This brings us to the present. Appellant, on April 8, 1993, appeared for the fourth time before the grand jury. Again, this grand jury proceeding was represented as a continuation of the prior grand jury investigations.3 Appellant now refused to answer any questions concerning rent. Upon the government's petition for contempt, the district court held a hearing at which appellant testified. He asserted that his refusal to testify was based on an agreement between himself and the government that he would never have to answer questions relating to the payment of rent as long as he continued to answer questions concerning gambling practices in general. ____________________ 2. According to the government, appellant was not held in contempt because the question was withdrawn by London's counsel. 3. To avoid any problems with the validity of the prior immunity orders, a new order was entered on April 28, 1993. -6- The district court judge made several findings. First, he determined that appellant had met informally with Dembin prior to testifying before the grand jury, even though the immunity order did not require such a meeting, because it was in his best interests to do so. The judge acknowledged Dembin's statement that he would not question appellant about rent. He concluded that "Dembin did not promise [appellant], however, that those questions would never be asked of [appellant] before any future Grand Jury." Second, the judge accepted the explanation that Dembin was merely being "prudent," seeking to get answers relevant to his investigation without the time-consuming delays of litigation. The judge further held that in January, 1988, [appellant] may well have had a hope that he would never be asked about rent. I also find, however, that he did not then believe, and in any event could not have reasonably believed that he had an agreement or assurance that he would never be asked about that subject. As for Pearlstein, the judge determined that he had acted with the same motives as Dembin because, like Dembin, he was interested in money laundering, not rent. As such, he also had sought the most efficient way to secure the information he needed. Thus, the judge found, Pearlstein had not, through his conduct, "recognize[d] or create[d] any agreement that the Government would not ever ask [appellant] . . . questions [about rent]." -7- Based on the foregoing, the judge concluded that there was no agreement between the government and appellant that he would never be asked about rent. He pointed out that appellant had never raised the existence of any such agreement when he was asked about rent at the 1992 grand jury, nor did he attempt to consult with his attorney even though his attorney was present outside the jury room. Appellant's failure to mention the agreement at the London ______ trial also belied his claim that an agreement concerning rent then existed. Finally, the judge determined that appellant "did not rely to his detriment or give any consideration for the purported agreement he now seeks to rely on." As for appellant's claim that his informal cooperation with the government -- supplying information outside of the grand jury -- constituted adequate consideration, the judge declared: It is often the case that a witness compelled to testify will meet with his counsel and the Government before testifying because it has the potential to make his Grand Jury testimony or trial direct and cross-examination testimony proceed more smoothly. I find that that is essentially what occurred in this case. Because appellant failed to establish a sufficient reason for his refusal to answer the questions concerning rent, the judge granted the government's petition for contempt. III. ___ -8- Whether the conduct in this case constituted contempt turns on a simple issue. If the government in exchange for cooperation bound itself not to ask appellant any further questions about rent, then under the case law he was not obliged to answer. Such commitments, where they are made, are treated as akin to contracts and construed under contract law principles. United States v. Pelletier, 898 ______________ _________ F.2d 297, 301 (2d Cir. 1990); United States v. Hogan, 862 _____________ _____ F.2d 386, 388 (1st Cir. 1988). Indeed, "due process requires that the government adhere to the terms of any . . . immunity agreement it makes." Pelletier, 898 F.2d at 302. Where the _________ terms of an agreement are not clear because, for example, there is no written contract, the court's "task [is] to construe the words used to try, if possible, to carry out the intention of the parties in light of all the facts and surrounding circumstances . . . ." In re Wellins, 627 F.2d _____________ 969, 971 (9th Cir. 1980). In this case, the district court found as facts that the government in the initial grand jury sessions chose not to question appellant about rent but never promised appellant permanent immunity from such questions. Further, the district court found that appellant himself did not believe that he had been given any such promise of permanent immunity. Findings of fact by the district court, in contempt proceedings as elsewhere, are reviewed under a -9- deferential standard and will not be set aside unless clearly erroneous. See Fed. R. Civ. P. 52(a). The district court's findings are amply supported by the evidence. There was no written agreement; appellant himself failed to recollect, even by his own account, the precise wording that he now claims to have amounted to a binding commitment; and appellant's failure to invoke any such supposed agreement when questioned at the 1992 grand jury session thoroughly undercuts his present claim. These facts support the finding that there was no commitment, hence no justification for appellant's failure to testify. Given the inherently factual nature of issues like this one, there is no reason to address at length the authorities cited by appellant, which are in any case distinguishable. In In re Wellins, for example, the ________________ government was found to have obtained cooperation by an agreement that Wellins' cooperation would not be revealed; and the court enforced that agreement. 627 F.2d at 971. Similarly in In Re Doe, 410 F. Supp. 1163 (E.D. Mich. 1976), __________ a witness turned over drugs following a promise that he would not be further questioned about them and the court held the government to its commitment. If appellant in this case had a comparable agreement, it too would be enforced, but appellant has not proved such an agreement. Absent an agreement, the contempt -10- is patent and the order under review is affirmed. ________ Appellant's motion for oral argument is denied. -11-